# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1915.

NATIONAL LIFE & ACCIDENT INS. CO. *v.* DEVANCE,

[70 South. 83.]

1. **TRIAL.** *Peremptory instruction. Right to. Libel and slander. Actions. Evidence.*

   Where the evidence is conflicting a peremptory instruction should not be given.

2. **TRIAL.** *Instruction. Error.*

   Where in an action for slander, plaintiff's declaration contained two counts and in the first count it was charged that the slanderous words were spoken by defendant's soliciting agent and in the second count the slanderous words are charged to have been spoken by defendant's superintendent, and the first count not being supported by the evidence, the court instructed the jury to find for the defendant on that count, it was error for the court to then instruct the jury that if they believed from the evidence that both said agents or either of them while acting within the scope of their authority and while about their master's business, spoke of and to the plaintiff the slanderous words alleged in the declaration, then they should find for the plaintiff and assess his damages etc.

3. **LIBEL AND SLANDER.** *Actions. Evidence*

   In an action against an insurance company for slander uttered by its agents after the beneficiary in one of its policies had recovered judgment on the policy, evidence that recovery had been contested on the ground that the policy was obtained by fraudulent representations, was admissible in mitigation of damages.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Suit by Henry De Vance against the National Life & Accident Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*N. Vick Robbins & Wells* and *May & Sanders*, for appellant.

The court will observe that the second count of the declaration proceeds solely upon the right to recover damages on account of the alleged slanderous and defamatory words used toward plaintiff by G. E. Liles as agent of defendant. At the close of the testimony, the court granted defendant's instruction No. 1 to find for the defendant on the first count of the declaration.

This action of the court was manifestly intended to and should have eliminated from the consideration of the jury, all of the evidence and all right of plaintiff to recover damages on account of the alleged slanderous words used by E. P. Mullen as set out in the declaration.

The court also granted defendant's instruction No. 6 (Record page 25) to the effect that the jury could not and should not base any verdict upon the words alleged to have been spoken by E. P. Mullen at plaintiff's house.

These two instructions given in behalf of the defendant excluded any and all right of recovery on account of any words which may have been spoken of the plaintiff by E. P. Mullen, at any time.

In the second count of the declaration, there is no claim whatever on account of any words used at any time by E. P. Mullen, and the court having instructed the jury to find for the defendant on the first count in the declaration, there remained nothing upon which the jury could lawfully render a verdict, except the alleged slanderous words used by G. E. Liles as set forth in the second count of the declaration.

And yet the court below, after having instructed the jury to find for the defendant in the first count of the de-

claration, and in total disregard of the fact that the second count of the declaration upon which alone a verdict could then be rendered, contained no allegation of any kind complaining of any words spoken by E. P. Mullen, proceeded to instruct the jury in plaintiff's instruction No. 2, that if they believed from the evidence, "that the defendant by its agent, E. P. Mullen and G. E. Liles, or either of them," spoke the slanderous words alleged in the declaration, they should find for plaintiff. This instruction (No. 2) for plaintiff, is in hopeless and irreconcilable conflict with defendant's instructions Nos. 1 and 6, and left the jury no intelligent rule to follow.

After the jury had been instructed to find for the defendant on the first count of the declaration, all defamatory words spoken by E. P. Mullen, were eliminated from the case and nothing remained of the declaration except the second count thereof, and in this count no complaint whatever is made on account of any words which may have been spoken by any other person than G. E. Liles.

When they were instructed in instruction No. 2 for plaintiff, that they were authorized to find a verdict for plaintiff on words which may have been spoken by E. P. Mullen, they were necessarily referred back to the first count in the declaration, since nowhere else in the declaration does E. P. Mullen's name appear; and so it is that they were first instructed to find for the defendant on the first count in the declaration, and also instructed that they might find for the plaintiff on account of the slanderous words complained of in that same court, and complained of nowhere else in the declaration.

Not only so, but in this same instruction for plaintiff (No. 2), the jury are not confined as they necessarily should have been, to the consideration of the slanderous words set forth in the second count of the declaration, but they are invited to the consideration of all slanderous words "alleged in the declaration," and this embraced the entire declaration, including both the first and second counts.

This instruction was not only in hopeless conflict with defendant's instructions, but it was confusing and misleading to the jury, and deprived the defendant of all benefit which it had a right to expect at the hands of the jury by the giving of defendant's instructions Nos. 1 and 6.

Under these two instructions for the defendant, even though the jury may have believed every word of the testimony of plaintiff's witnesses as to words spoken by E. P. Mullen as set forth in the declaration, still it was their duty to render a verdict for the defendant as to these words because they are only complained of in the first count of the declaration. The authority given to the jury to find for the plaintiff on any slanderous words used by E. P. Mullen or G. E. Liles, or either of them, as was given by plaintiff's instruction No. 2, was misleading in the highest degree because no words used by E. P. Mullen are alleged in the second count of the declaration and on this second count alone were they in any event authorized to find for the plaintiff.

Section 743 of the Mississippi Code of 1906, provides as follows: "In actions for libel or slander, assault and battery and false imprisonment, a defendant under the plea of not guilty, may give any evidence of mitigating circumstances to reduce the damages, notwithstanding he may also have pleaded a justification."

The plaintiff in this suit on the trial in the circuit court below, had been permitted to testify to the fact as to the pendency of this suit at law and as to the fact that he had obtained the insurance policy on the life of his son, and as to the fact that the defendant insurance company had refused to pay the policy after his son's death, all having been done over the objection of the defendant herein, and the declaration, in the second count, charges that the slanderous words alleged to have been spoken of the plaintiff, were uttered immediately after the trial of this cause in the court of the justice of the peace, and just a few minutes after the trial. In mitigation of the

damages it was clearly competent for the defendant to prove the character of the suit between the parties and the plaintiff before the magistrate's court, as also the result of said suit, as well as the attendant facts and circumstances. It was proper that these facts should go to the jury in order that they might know the precise facts and circumstances under which the slanderous words complained of were used and to know the extent of the provocation, if any, under which they were uttered, because the proof in this case shows that these words arose from a misunderstanding on account of testimony which had been given in that trial. The ruling of the court in excluding this testimony from the jury and in refusing to permit the defendant to cross-examine the plaintiff in regard to the facts and attendant circumstances of that trial, was clearly in opposition to the statute above referred to which provides that the defendant under the general issue, may give any evidence in mitigating circumstances to reduce the damages, not withstanding he may also have pleaded justification.

It was most important to the defendant, that the proof along this line should have gone to the jury in mitigation. It was proposed to show that the plaintiff had acted in bad faith towards the defendant with reference to the procuring of the insurance policy on the life of his son and that said policy was procured by false and fraudulent representations and these facts, which proven, would properly have been considered by the jury in mitigation of damages; they would have gone very far to show the worthlessness of plaintiff's character and to show that he had been but little damnified by the utterance of the language charged in the declaration as being slanderous. The proof was competent and should have gone to the jury and the error of the court below in refusing to allow the defendant in that court to make this proof, was fatal error and necessarily was prejudicial to the defendant in the highest degree. *Lewis* v. *Black,* 5 Cushman (Miss.) 434; Second Greenleaf Evi-

dence, paragraph 421; *Powers* v. *Pressgroves,* 38 Miss. 227.

*A. A. Chaney,* for appellee.

The first count of the declaration charges that one E. P. Mullen went to the home of appellee and attempted by threats to prevent him from proceeding with justice court suit against his company; that the justice matter was later tried and Mullen, after that time, met DeVance again, and used the language attributed to him, to the appellee, in the presence of witnesses, on the streets of Vicksburg, and the second count charging that G. E. Liles, superintendent of the company, used the language attributed to him immediately after the trial of the justice court suit.

Was Mullen acting within the scope of his authority and in and about his master's business when he went to the home of appellee, and when he used the words attributed to him by the witnesses in speaking of and to the appellee on the streets of Vicksburg? This is one of the questions raised by appellant in its rejoinder brief. It was the duty of agent Mullen to write insurance and collect premiums, according to his testimony. It is the duty of the superintendent, so he states, to make settlement of claims that come into the office. When Mullen went to the home of appellee he was accompanied by the superintendent, G. E. Liles. Hear the testimony of Mariah DeVance: "Who was with him (Mullen)?" "That gentleman there." "Mr. Liles?" "Yes, sir." and then (bottom of page 56: "Did Mr. Mullen have anything to say that night?" "Mr. Mullen did the raring." "Did Mr. Liles have anything to say?" "He said, 'you will get some nice clothes out of this suit'—both came in together," meaning Mr. Mullen and Mr. Liles. The testimony of appellee is that two or three came out to his house in the nighttime in response to the justice court suit, and when he heard the cursing he went into a back

room, and Mariah DeVance, the wife of appellee, identi-
fied G. E. Liles, the superintendent, as being one who
came out to the house with Mullen, and was there with
him at the time he is alleged to have done the cursing
and made the threats as to what would be done if he,
appellee, proceeded with the justice court suit against
his company. We contend that even if Liles had not
gone out to the home of appellee with Mullen, that Mul-
len, was clearly acting within the scope of his authority,
—that he went there for no other purpose except to pre-
vent, by threats and abuse, the appellee from proceeding
with the case in the justice court, but certainly, it cannot
be successfully contended that when he went there ac-
companied by his superior officer, the superintendent of
the company, whose duty it was to make adjustment of
claims, and who, at least, acquiesced in the actions of
Mullen, he was not acting within the scope of his author-
ity. The court will observe that the very first time that
DeVance, the appellee, was attacked by agent Mullen, it
was at his home, in the nighttime, that it related to the
suit against his company, and that his superintendent
was with him at the time, and that he acquiesced and
took part in the abuse and vilification. "The other man
said this—"You think you will get some money off the
company to buy some fine clothes," (meaning the other
man who came out with Mullen). A few days after this
occurrence at the home of appellee, Mullen met DeVance
on the streets, near his home, and continued the same
course started by him with his superintendent.

Was G. E. Liles acting within the scope of his author-
ity when he used the language attributed to him by the
witnesses at the home of appellee and at the justice
court? This is another question raised in the rejoinder
brief of appellant. It has already been shown that it
was a part of his duty to make settlement of claims
against his company, and it has been shown that a claim
had been filed by the appellee; that he brought suit on
this claim in the justice court; that after the suit was

filed Liles went to his home with Mullen at the time the trouble started; that this trouble continued till after the suit was tried in the court of Justice of the Peace, Kearney; that immediately after the trial, and inside of the steps leading to the court-room he, Liles, accused him of bribing the court and swearing to falsehoods; that he went to the court representing the company.

Another question raised in the rejoiner brief of appellant on page 19 of its brief, is that the appellant should have been permitted to have gone into the merits of the justice court proceedings, because, as it is argued, the appellant was placed in the false attitude of not paying a just claim. The record will disclose the fact that neither side of this controversy developed its side of the case in the justice court, except to show that suit had been filed and tried in the justice court as alleged in the declaration, and to show that appellee was cursed and abused by the agents of appellant because he had filed the suit in the justice court, but it is not shown that we went into details of this justice suit. It is argued that the court erred in refusing to permit the appellee to answer this question: "DeVance they refused to pay you that money because they said you made representations that were not true?" It is clearly shown that the justice court trial was not gone into by the appellee, but we contend that, regardless of the merits of this justice court matter, appellee certainly had the right to a trial without being abused and vilified by the appellant. The court will observe from the testimony of appellee that the appellant attempts to show cause for the mistreatment of appellee, by showing that the policy was procured by false representations. Can the appellant defend its actions, in mitigation of damages or for any other reason, in going to the home of appellee and of the treatment at the justice court by showing the policy was procured by fraudulent representations, and at the same time deny going to the home and deny the trouble at the justice court?

We submit, without going into further details, that the judgment of the court below should not be disturbed.

SMITH, C. J., delivered the opinion of the court.

This is an action for slander in which judgment was rendered for the plaintiff. The declaration is in two counts, in the first of which certain slanderous words are alleged to have been spoken of the plaintiff by E. P. Mullen, one of appellant's soliciting agents; and in the second count certain slanderous words are alleged to have been spoken of plaintiff by G. E. Liles, the superintendent of appellant's business at Vicksburg. The first count of the declaration was not supported by the evidence, and the jury were instructed by the court to find for the defendant upon that count. Appellee sued appellant in the court of a justice of the peace to recover the amount of an insurance policy issued by appellant upon the life of his, appellee's son. Liles was present at and participated in the trial of this case, which resulted in a judgment for appellee. Immediately after the rendition of this judgment, and as Liles, appellee, and several other parties were in the act of leaving the courtroom, he, Liles, according to the evidence introduced in behalf of appellee, said in the presence and in the hearing of appellee and several other persons that. "if he (meaning appellee) had not paid the justice of the peace to decide against us and lied in his testimony, he would never have obtained a judgment against us;" that the judgment rendered "was a damned outrageous perjured one." This was denied by Liles.

At appellee's request the court below instructed the jury "that if they believe from the evidence that the defendant, by its agents, E. P. Mullen and G. E. Liles, or either of them, while acting within the scope of their authority and while about their master's business, spoke of and to the plaintiff, the slanderous words alleged in the declaration, and testified to by the witnesses of the plain-

tiff, then they will find for the plaintiff and assess his
damages," etc.

The peremptory instruction requested by appellant
was properly refused (*Richberger* v. *Express Co.*, 73
Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep.
522); but the jury should not have been instructed to find
for appellee in event they believed from the evidence that
slanderous words alleged in the declaration were spoken
of him by E. P. Mullen, and the error in so doing was
not cured by the instruction charging the jury to find for
appellant on the first count of the declaration.

In the brief of counsel for appellant it is said that the
court below excluded testimony offered in behalf of ap-
pellant tending to show that it declined to pay the insur-
ance policy and defended the suit thereon, on the ground
that it was obtained by fraudulent representations made
to it by appellee. We do not think the record is in such
shape as to present this ruling of the court for considera-
tion, but in order that the whole matter may be disposed
of on the next trial, we will say that the evidence should
not have been excluded, it being admissible in mitigation
of damages.

                                    *Reversed and remanded.*