## GEORGE RICHBERGER *v.* AMERICAN EXPRESS COMPANY.

1. MASTER AND SERVANT. *Express company. Liability of, for torts of agent.*

   Where one has complained of having been required to pay an over-charge on an express package, and the local agent who made the overcharge, on refunding the excess and taking his receipt there-for, immediately thereafter, while he yet remains in the express office, to which he had gone on business, "wilfully, wantonly, oppressively and wrongfully curses, abuses, insults and maltreats him," because he has demanded and had such excess refunded, the express company is liable in damages for the tort thus committed by its agent.

2. SAME. *Test of liability.*

   The doctrine, once prevalent, that the master is never liable for the wilful or malicious acts of his servant, has been widely departed from in modern jurisprudence, and the true test of liability now rests upon the inquiry of whether or not the injurious act was done in the course of the master's business. *Williams* v. *Planters' Ins. Co.*, 57 Miss., 759, cited; and *McCoy* v. *McKowen*, 26 *Ib.*, 487, and *New Orleans, etc., R. R. Co.* v. *Harrison*, 48 *Ib.*, 112, overruled in so far as they conflict herewith.

3. SAME. *Connection of tort with master's business. Must be immediate. Case.*

   The injurious act complained of was not, on the averments of the declaration, so separated by time and logical sequence from the refunding of the excess and taking of the receipt, which were the business of the master, as to relieve the master of liability, the whole transaction having consumed but a few moments, and all of its features constituting one continuous and unbroken occur-rence, while the provoking cause of the tort was the lawful de-mand made for the excess.

FROM the circuit court of the second district of Coahoma county.

HON. R. W. WILLIAMSON, Judge.

The plaintiff's declaration set out the following: That, on the twenty-third day of December, 1894, he delivered at the

office of the defendant express company, in the town of Clarksdale, and to the agent in charge thereof, two certain packages, upon which he desired to prepay the charges from Clarksdale to the town of Tutwiler; that the said agent told him the amount necessary to prepay the same, which he thereupon paid to said agent, but called the attention of said agent to the fact that he was charging a sum in excess of the rate of the express company for transmission; that afterwards, on the same day, he met on the railway train the general agent of the express company, and ascertained from him that said charge was excessive, and the said general agent said the matter would be arranged; that afterwards, on the twenty-fifth of December, 1894, he went to the office of the express company, and told said agent what had been said by the general agent, and asked that the amount of said overcharge be paid to him, but this was not done; that afterwards, on or about the first week in January, 1895, he went to said express office at Clarksdale, upon business with said company, when, and at which time, the said agent of said express company in charge of said office informed him that he desired to refund to him said overcharge, and then and there paid the same to plaintiff, and required plaintiff to sign a receipt for the same, and when plaintiff signed and delivered said receipt to said agent, the said agent did then and there, immediately upon the reception of said receipt, and while plaintiff was there in the business office of said company, wilfully, wantonly, oppressively and wrongfully curse, abuse, insult and maltreat plaintiff, because plaintiff had demanded and received from said company the overcharge as aforesaid; thereby injuring and wounding him to his great damage; wherefore he demands judgment of said American Express Company for the sum of $1,950, and all costs.

Among the grounds of demurrer to this declaration, assigned by the defendant, are the following:

"3. Because it appears on the face of said declaration that the act or acts of said defendant's pretended agent of which com-

plaint is made, and on which plaintiff relies as the basis of his suit, were not done or committed by him in the line of his duty to the defendant, nor within the scope of his, the said agent's, employment by said defendant.

"4. Because it does not appear from said declaration that the act or acts of said defendant's pretended agent, of which complaint is therein made, and on which plaintiff relies as the basis of his suit, were done or committed by him with the authority, knowledge or consent of said defendant, and because it does appear from said declaration that all of the said acts so complained of and set forth in said declaration were the wilful acts of said agent, done by him in his own wrong, without authority from this defendant, and without its knowledge, consent or subsequent ratification, and were not within the line of said agent's duty or within the scope of his employment by the defendant."

*Cook & Yerger*, for the appellant.

The declaration shows that the appellant was in the office and regular place of business of the express company for a lawful purpose, and was called upon by the company's agent to receive and receipt for an overcharge that had been made by this same agent and paid by appellant, and that, after the receipt was signed, and because the appellant had asked for and received his legal rights, the agent thereupon immediately cursed and insulted him.

It is not desired on behalf of appellant to question the authority of those cases which hold that the master is not liable where the servant was not acting within the scope of his authority, but had gone outside to find strangers with whom the master had no business, and with whom the servant had no business for his master.

It the case at bar, however, the agent was transacting a business with which he had been charged, and was engaged with a person to whom the company owed a duty, and while the com-

pany confessed their wrong through an agent chosen by them to right the wrong, the agent inflicted a grievous injury upon the appellant because appellant received the benefit of what the principal admitted to be his due.

The company selected an agent to tender to appellant the amount of money unjustly extorted from him, and, while engaged in the performance of this duty, and because of it, the agent proceeded to curse and abuse appellant, because he, the innocent victim of the company's rapacity dared to accept justice.

The doctrine that the master is not responsible for the words and acts of his servant when the servant disobeys his instructions, and commits a tort, is not disputed by the appellant, but this rule has no application to the state of facts here presented. It is true that the agent was charged with the duty of refunding the overcharge in a proper manner, and when he went outside of that he was disobeying the orders of his principal, but he was clearly engaged in the performance of an act which could be performed in two ways. He could have performed it in a legal manner, or he could have performed it, as he in fact did, in such a manner as to inflict damage upon the person with whom he was dealing. He did what he was authorized to do, but did it in an illegal manner. There is nothing in the nature of an express company, or of its duties to its patrons and the public, to exempt it from liability in such a case.

*D. A. Scott*, for the appellee.

Since the time of Lord Kenyon's famous opinion in the case of *McManus* v. *Crickett*, 1 East, 106, the rule of *respondeat superior* has never been known to apply to cases such as this. The case of the *Southern Express Co.* v. *Brown*, 67 Miss., 260, does not do so, for, in that case, as the opinion states, the plaintiff did not seek to show "any wilful wrong; his effort was to show gross negligence." The injurious act of the servant imposes no liability upon the master, unless it was some-

thing which his employment contemplated, or that, if done by him wilfully, he could have done it in his employer's name. Cooley on Torts, 536; *Williams* v. *Pullman Palace Car Co.*, 3 So. Rep., 631.

The rule seems to be that, when the agent, acting in the capacity bestowed upon him by the corporation and in discharge of some duty or employment directed by the employer, or incidental to his situation, does an act that causes damage, the corporation is responsible. But, where the agent does an act of his own fee will, without reference to his functions as an agent, the corporation is not responsible. For example, if some person should go into a banking house or insurance office, and there get into a difficulty in relation to business of the corporation with an agent or officer, and an assault and battery should ensue, it could not be seriously contended that the bank or insurance office was responsible for damages unless there was some recognition of the act. *Etting* v. *Bank*, 7 Rob. (La.), 459; *Dyer* v. *Riley*, 28 La., 6; Pierce on Railroads, 279; Fields on Corp., §§ 524, 623; *Isaacs* v. *Railway*, 47 N. Y., 122; *Railway Co.* v. *Baum*, 25 Ind., 72; *Flower* v. *Railway Co.*, 69 Pa. St., 210.

The rule is best stated by Lord Kenyon in *McManus* v. *Crickett, supra,* as follows: " 1. When the servant is in the performance of his master's orders or authorized acts, and in the doing thereof conducts himself so negligently or unskilfully that an injury results to another, or his goods, then the doctrine *respondeat superior* applies, and the master will be liable in an action on the case. 2. That for the acts of the agent or servant wilfully and intentionally done without the command or authorization of the master, the servant is liable, and the master is not." Story on Agency, § 456; 2 Kent's Com., marg. notes 259, 260; Addison on Cont., 635; 1 Smith's Leading Cases, H. & W. Notes, 560; *Foster* v. *Essex Bank*, 17 Mass., 479; Edwards on Bailments, 318, 319; Angell on Carriers, §§ 541, 604; *Richmond Turnpike Co.* v. *Vanderbilt*, 1 Hill, 486; *Hib-*

*bard* v. *N. Y. & E. R. R. Co.*, 15 N. Y., 455; *Cox* v. *Keahey*, 76 Am. Dec., 385; *Wright* v. *Wilcox*, 19 Wend., 343.

The following instances of its application illustrate the rule: Where a conductor by mistake gave a passenger a transfer which appeared on its face to have expired by limitation, and the conductor on the connecting line ejected him, he was entitled only to compensatory damages for the act of the servant, unless it was an authorized act, or there was a subsequent ratification. *Muckell* v. *Rochester Railway Co.*, 86 N. Y. S. C.; 79 Hun, 32. Where a servant employed in the delivery of goods by wagon, drives out of the way of his route for the purpose of visiting his home, the master is not liable for injuries to a child because of the servant's negligence in driving as he left his home. *Chicago Consolidated Bottling Co.* v. *McKenzie*, 51 Ill., 325. A contractor is not liable for an injury caused by bricks falling from an improperly constructed wall, after its completion, through the intentional or negligent act of an employee not acting within the scope of his employment, though proper scaffolding or guards to prevent brick falling had not been erected. *Mayer* v. *Thompson-Hutchinson Building Co.* (Ala.), 16 So. Rep., 620. A master is not liable for the acts of a servant committed outside of the line of his duty. *Western Union Tel. Co.* v. *Mullins* (Neb.), 2 N. W., 880. Where a railroad brakeman threw a stone at a boy attempting to board a train, and struck a child near by, the company is not liable for the result of the injury, the act of the brakeman not being within his employment. *Ga. Railroad & Banking Co.* v. *Wood*, 94 Ga., 124.

In *McCoy* v. *McKowen*, 26 Miss., 487, will be found a state of facts which are almost identical with those presented in this record. In the opinion in that case the court cites with approval *McManus* v. *Crickett*, *supra*, and *Harris* v. *Nichol*, 5 Munf., 483. See, also, *N. O., etc., R. R. Co.* v. *Harrison*, 48 Miss., 112, to the same effect. The doctrine of *respondeat superior* has been applied with most rigidity to railway com-

panies, but it is held in that class of cases, that where the wanton and malicious act complained of was done by the servant in the discharge of his duty to and within the line of his employment by the master, the master is liable, although the plaintiff was a trespasser, but, if the servant was accomplishing some purpose of his own that had no connection with any such duty to his master, then the master is not liable. *Railway Co.* v. *McAfee*, 71 Miss., 70; *Railway Co.* v. *Harris*, *Ib.*, 74.

The agent whose act is complained of in this case manifestly was not acting for his master, nor was he acting in the furtherance of the interests of his master. On the contrary, he gratuitously insulted appellant to gratify his personal malice, and consequently did not thereby impose liability upon his master.

WHITFIELD, J., delivered the opinion of the court.

Plaintiff had been made to pay an overcharge on express matter from Clarksdale to Tutwiler, in this state, by the local agent of appellee, and the general agent had been seen, and stated that the matter would be arranged. Plaintiff saw the local agent about it on December 25, 1894, but was put off. Subsequently, the declaration avers, "said plaintiff, on or about the first day of January, 1895, went to the office of said express company . . . upon business with said company, when . . . said agent of said company in charge of the office informed plaintiff that he then and there desired to refund to plaintiff the said overcharge, . . . and did then and there pay to plaintiff said overcharge, and required plaintiff then and there to sign a receipt for the same, and, when the said plaintiff signed and delivered said receipt to said agent, the said agent did, then and there, immediately upon the reception of said receipt, and while plaintiff was there in the office of said company, wilfully, wantonly, oppressively and wrongfully curse, abuse, insult and maltreat plaintiff, because plaintiff had demanded and received from said company said overcharge," etc. The old doctrine of *McManus* v. *Crickett*,

1 East, 106, that the master is never liable for the wilful or malicious act of his servant—like the early doctrine that a corporation was never so liable, which latter doctrine arose out of the early misconception of the nature of a corporation (see 5 Thomp. Com. on Corp., §§ 6275, 6277, 6280, 6298)—has long since been repudiated.    Cowen, J., put the whole argument, for the opposite view, in a single sentence when he said, in *Wright* v. *Wilcox*, 19 Wend., 343, that "the dividing line was the wilfulness of the act." But the whole argument against liability on such reasoning is definitely and conclusively answered in Thompson on Corporations, where the whole question is exhaustively treated.    Says this author in § 6298: "The courts which have so ruled have proceeded on the theory that authority from the master to the servant to commit a wilful wrong will not be implied, and that the servant, when so acting, will therein be deemed to act not for his master, but for himself.    If he makes use of his master's property in committing this wrong, he will be deemed, according to the fantastic reasoning of Lord Kenyon in *McManus* v. *Crickett* (borrowed from Rolle's Abridgment), to have acquired, for the time being, a special property therein.    The fallacy of this reasoning was that it made a certain mental condition of the servant the test by which to determine whether he was acting about his master's business or not.    Moreover, with respect of all intentional acts done by a servant in the supposed furtherance of his master's business, it clothed the master with immunity if the act was right, because it was right, and, if it was wrong, it clothed him with a like immunity, because it was wrong.    He thus got the benefit of all his servant's acts done for him, whether right or wrong, and escaped the burden of all intentional acts done for him which were wrong.    Under the operation of such a rule, it would always be more safe and profitable for a man to conduct his business vicariously than in his own person.    He would escape liability for the consequences of many acts connected with his business springing from the imperfection of

human nature, because done by another, for which he would be responsible if done by himself.    Meanwhile, the public, obliged to deal or come in contact with his agents, for intentional injuries done by them, might be left wholly without redress. . . .    A doctrine so fruitful of mischief could not long stand unshaken in an enlightened system of jurisprudence.''    And he states that it is repudiated by eminent text writers and the great weight of modern authority, citing quite freely the authorities to date.

He then correctly shows the true test to be, not whether the tort was committed in pursuance of orders from the master, or against orders, whether the master ratified or not, whether the tort was wilful and malicious or not, but whether, and solely whether, the act constituting the tort was done in the master's business.    As well said in *Railroad Co.* v. *Young*, 21 Ohio St., 518: ''If the nature of the injurious act is such as to make the master liable for its consequences, in the absence of the particular intention, it is not perceived how the presence of such intention can be held to excuse the master.''    Sections 6299–6316, inclusive.

He also clearly points out that the rule is not one of logic, but of public policy and necessity, a view concurred in by Judge Andrews in *Higgins* v. *Watervliet Turnpike Co.*, 46 N. Y., 27, the reasoning in which case, and in *Rounds* v. *Delaware, etc., R. R. Co.*, 64 N. Y., 129, is unanswerable.    To the same effect see *Palmeri* v. *Manhattan R. R. Co.*, 30 N. E. Rep., 1001; Cooley on Torts, 626 (1); Mecham on Agency, §§ 740, 741, and the authorities cited by these writers.

Judge Thompson is not alone in his criticism of *McManus* v. *Crickett, supra*.    Chief Justice Ryan, in *Craker* v. *Chicago, etc., R. R. Co.*, 36 Wis., 657 (17 Am. Rep., 504), points out the fact that *McManus* v. *Crickett* rested on *Middleton* v. *Fowler*, the only case cited in its support, and that that case was not a case of malice, but of negligence, and said, with great pertinency and power, that ''one employing another in good

faith to do his lawful work would be as little likely to author-
ize negligence as malice,'' and that '' either would be equally
dehors the employment.'' See, also, *American Ex. Co.* v.
*Patterson,* 73 Ind., 430; *Southern Ex. Co.* v. *Fitzner,* 59
Miss., 581; *Williams* v. *Planter's Insurance Co.*, 57 Miss., 759.

It thus appears that *McManus* v. *Crickett* is not now law.
Counsel for appellee relies upon and cites this case, and the
cases of *McCoy* v. *McKowen,* 26 Miss., 487, and *Railroad Co.*
v. *Harrison,* 48 Miss., 112. It is true that both these cases
are based on *McManus* v. *Crickett.* It is also true that both
expressly declare that '' it is immaterial whether or not the
tortious act be committed while the agent is engaged in the
rightful business of his employer, which he is attending to by his
direction; for if he transcends his authority while so engaged,
his acts do not bind his employer unless sanctioned by him; ''
thus declaring immaterial that which is the very test of liability
in this class of cases. So far as this declaration is concerned,
these cases are hereby overruled expressly, that they may not
further mislead. They have been practically overruled by re-
peated subsequent decisions of this court. *Williams* v. *Planters'*
*Ins. Co.*, 57 Miss., 759. As to *Railroad Co.* v. *Harrison,*
*supra,* it is correctly said by Judge Thompson, § 6300, bottom
of p. 4929, that '' the true reason of the decision was not that
the act was wilful or malicious, but that it was plainly outside
the line of duty of the servant.''

But it is urged that however applicable this doctrine may be
to carriers of passengers, it is not applicable to an express com-
pany. Doubtless there is a difference in the extent of the ap-
plication of the principle, as between carriers of passengers and
express companies, measured exactly by the difference in the
things done by them in the discharge of their duties respec-
tively. But the principle applies to both. An express com-
pany does not transport passengers, and cannot be made liable
as a carrier of passengers might for wilful torts committed by
its agents on passengers in their transportation; but it keeps

offices for the transaction of its proper business, a business calling to its offices every day thousands of citizens, and in its dealing with its customers, in its offices, in its business, it is bound, in Judge Story's language, "for respectful treatment and for decency of demeanor."

It is impossible to say, on the allegations of this declaration, that the tort committed immediately upon the delivery of the receipt to the agent, and because of the demand for the refunding of what was plaintiff's conceded due, was so separated in time or logical sequence as not to have been an act done in the master's business. The whole transaction occurred in the shortest time, and was one continuous and unbroken occurrence. The cursing and abusing and maltreatment were all administered in connection with the taking of the receipt and immediately upon its delivery, and because of the demand for his rights in that matter, and while plaintiff was in appellee's office to transact, and transacting, this very business. What was said and done thus immediately upon the delivery of the receipt, was part of the *res gestæ*. As well said by Judge Thompson (Com. on Corp., § 6299, top of page 4928): "In this view, even under the modern doctrine, the acts or declarations of the servant or agent tending to show his state of mind at the time of the act complained of, would be admissible in evidence as part of the *res gestæ*." We have heretofore quoted from the masterly opinion of Judge Andrews in *Rounds* v. *Delaware, etc., R. R. Co.*, 64 N. Y., 136, in *Railroad Co.* v. *Latham*, 72 Miss., 32, to show when, in this character of case, the corporation would not be liable. Complementary to that, we close this opinion with the words of the same great judge in the same case, at page 134, to show here a case of liability: "The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the cir-

cumstances and the occasion, goes beyond the strict line of his duty and authority and inflicts an unjustifiable injury upon another.''

> *Reversed, demurrer overruled and cause remanded.*