JEROME LANGE v. NATIONAL BISCUIT COMPANY.

211 N. W. 2d 783.

October 19, 1973—No. 43829.

*Mandel & Stiegler* and *Alan Stiegler,* for appellant.

*Reding, Votel & Stevens* and *Terrance W. Votel,* for respondent.

Heard before Knutson, C. J., and Kelly, Todd, and Olson, JJ. Reconsidered en banc.

TODD, JUSTICE.

Plaintiff brought this action against defendant for damages resulting from an assault upon him by an employee of defendant. The matter was submitted to the jury on the alternate theories of negligence and respondeat superior. The jury found that, although the employee had not been acting within the scope of his employment at the time of the assault, defendant had been negligent in the hiring and retention of such employee. The trial court then granted defendant's motion for judgment notwithstanding the verdict on the issue of negligence and denied plaintiff's motion for judgment notwithstanding the verdict on the issue of respondeat superior. Plaintiff appeals from the judgment. We reverse.

Plaintiff was the manager of a small grocery store which did business with defendant. Ronnell Lynch had been hired by defendant as a cookie salesman-trainee in October 1968. On March 1, 1969, Lynch was assigned his own territory, which included plaintiff's grocery store. Evidence was submitted at trial that between March 1 and the date of the assault, May 1, 1969, defendant received numerous complaints from grocers served by Lynch indicating that Lynch was overly aggressive and that he was taking the shelf space reserved for competing cookie companies.

On May 1, 1969, Lynch came to the store managed by plain-

tiff to place previously delivered merchandise on the shelves. An argument developed between plaintiff and Lynch regarding Lynch's servicing of plaintiff's store. Lynch became very angry and started swearing. Plaintiff told Lynch to either stop swearing or leave the store, as children were present. Lynch then became uncontrollably angry, saying, "I ought to break your neck." He went behind the counter and dared plaintiff to fight. Plaintiff refused, whereupon Lynch proceeded to viciously assault him. Upon completion of the assault, Lynch proceeded to throw merchandise around the store and then left.

■ There is no dispute with the general principle that in order to impose liability on the employer under the doctrine of respondeat superior it is necessary to show that the employee was acting within the scope of his employment. Unfortunately, there is a wide disparity in the case law in the application of the "scope of employment" test to those factual situations involving intentional torts. The majority rule as set out in Annotation, 34 A. L. R. 2d 372, 402, includes a twofold test: (a) Whether the assault was motivated by business or personal considerations; or (b) whether the assault was contemplated by the employer or incident to the employment.[1]

Under the present Minnesota rule, liability is imposed where it is shown that the employee's acts were motivated by a desire to further the employer's business.[2] Therefore, a master could only be held liable for an employee's assault in those rare in-

[1] Such employment would include that of security guards, strike breakers, saloon "bouncers," etc. A similar test was incorporated by Restatement, Agency, § 235, and Restatement, Agency 2d, § 228.

[2] Nelson v. Nelson, 282 Minn. 487, 166 N. W. 2d 70 (1969); Cofield v. McCabe, 58 Minn. 218, 59 N. W. 1005 (1894); Johanson v. Pioneer Fuel Co. 72 Minn. 405, 75 N. W. 719 (1898); Sunderland v. Northern Express Co. 133 Minn. 158, 157 N. W. 1085 (1916); Guyer v. Smullen, 160 Minn. 114, 199 N. W. 465 (1924); Plotkin v. Northland Transp. Co. 204 Minn. 422, 283 N. W. 758 (1939); Porter v. Grennan Bakeries, Inc. 219 Minn. 14, 16 N. W. 2d 906 (1944); Boland v. Morrill, 270 Minn. 86, 132 N. W. 2d 711 (1965); Laurie v. Mueller, 248 Minn. 1, 78 N. W. 2d 434 (1956).

stances where the master actually requested the servant to so perform, or the servant's duties were such that that motivation was implied in law.

The inherent inconsistency of such a rule was recognized in Richberger v. American Exp. Co. 73 Miss. 161, 168, 18 So. 922 (1896), where the court noted:

"* * * Cowen, J., put the whole argument, for the opposite view, in a single sentence when he said, in Wright v. Wilcox, 19 Wend., 343, that 'the dividing line was the wilfulness of the act.' But the whole argument against liability on such reasoning is definitely and conclusively answered in Thompson on Corporations, where the whole question is exhaustively treated. Says this author in § 6298 : 'The courts which have so ruled have proceeded on the theory that authority from the master to the servant to commit a wilful wrong will not be implied, and that the servant, when so acting, will therein be deemed to act not for his master, but for himself. If he makes use of his master's property in committing this wrong, he will be deemed, according to the fantastic reasoning of Lord Kenyon, in Mc Manus v. Crickett (borrowed from Rolle's Abridgment), to have acquired, for the time being, a special property therein. The fallacy of this reasoning was that it made a certain mental condition of the servant the test by which to determine whether he was acting about his master's business or not. Moreover, with respect of all intentional acts done by a servant in the supposed furtherance of his master's business, it clothed the master with immunity if the act was right, because it was right, and, if it was wrong, it clothed him with a like immunity, because it was wrong. He thus got the benefit of all his servant's acts done for him, whether right or wrong, and escaped the burden of all intentional acts done for him which were wrong. Under the operation of such a rule, it would always be more safe and profitable for a man to conduct his business vicariously than in his own person. He would escape liability for the consequences of many acts connected with his business springing from the imperfection of human nature,

because done by another, for which he would be responsible if done by himself. Meanwhile, the public, obliged to deal or come in contact with his agents, for intentional injuries done by them, might be left wholly without redress. * * * A doctrine so fruitful of mischief could not long stand unshaken in an enlightened system of jurisprudence.' And he states that it is repudiated by eminent text writers and the great weight of modern authority, citing quite freely the authorities to date.

"He then clearly shows the true test to be, not whether the tort was committed in pursuance of orders from the master, or against orders, whether the master ratified or not, whether the tort was wilful and malicious or not, but whether, and solely whether, the act constituting the tort was done in the master's business."

■ Respondeat superior or vicarious liability is a principle whereby responsibility is imposed on the master who is not directly at fault. Its derivation lies in the public policy to satisfy an instinctive sense of justice. It has been explained most frequently under the "entrepreneur theory." This justification holds that an employer, knowing that he is liable for the torts of his servants, can and should consider this liability as a cost of his business. He may then avoid the cost by insuring against such contingencies, or by adjusting his prices so that his patrons must bear part, if not all, of the burden of insurance. In this way, losses are spread and the shock of the accident is dispersed. A secondary consideration lies in the fact that an employer, knowing that he is responsible, will be alert to prevent the occurrence of such injuries.

In developing a test for the application of respondeat superior when an employee assaults a third person, we believe that the focus should be on the basis of the assault rather than the motivation of the employee. We reject as the basis for imposing liability the arbitrary determination of when, and at what point, the argument and assault leave the sphere of the employer's business and become motivated by personal animosity. Rather, we

believe the better approach is to view both the argument and assault as an indistinguishable event for purposes of vicarious liability. As stated in Gulf, C. & S. F. Ry. Co. v. Cobb, 45 S. W. 2d 323, 326 (Tex. Civ. App. 1931):

"* * * [T]he master is liable for any such act of the servant which, if isolated, would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as one indivisible tort, which, for the purposes of the master's liability, takes its color and quality from the earlier act."

Attempts, in cases where altercations arise, to distinguish the doctrine of respondeat superior on the theory that at some point the argument becomes personal and not related to the scope of employment are unduly restrictive and attribute to the employee, enraged by reason of his employment, a rational decision, that he is crossing some imaginary line to pursue personal business. Whether the nature and character of the dispute change from a work-related incident to a personal assault, and, if so, when they do, is not dispositive of the issue.

We hold that an employer is liable for an assault by his employee when the source of the attack is related to the duties of the employee and the assault occurs within work-related limits of time and place. The assault in this case obviously occurred within work-related limits of time and place, since it took place on authorized premises during working hours. The precipitating cause of the initial argument concerned the employee's conduct of his work. In addition, the employee originally was motivated to become argumentative in furtherance of his employer's business. Consequently, under the facts of this case we hold as a matter of law that the employee was acting within the scope of employment at the time of the aggression and that plaintiff's post-trial motion for judgment notwithstanding the verdict on that ground should have been granted under the rule we herein

adopt. To the extent that our former decisions are inconsistent with the rule now adopted, they are overruled.

Among other states which have abandoned the "motivation test" and allow recovery for assaults arising out of or ancillary to the work being done by the employee are Mississippi,[3] California,[4] Kentucky,[5] Illinois,[6] Alabama,[7] Connecticut,[8] and Montana.[9]

Plaintiff may recover damages under either the theory of respondeat superior or negligence. Porter v. Grennan Bakeries, Inc. 219 Minn. 14, 16 N. W. 2d 906 (1944). Having disposed of the matter on the former issue, we need not undertake the questions raised by defendant's asserted negligence in the hiring or retention of the employee.

Reversed and remanded with instructions to enter judgment for the plaintiff.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been

---

[3] Richberger v. American Exp. Co. 73 Miss. 161, 171, 18 So. 922, 923 (1896) (if the assault occurred within the res gestae of the business being conducted so that the transaction is "one continuous and unbroken occurrence.")

[4] Carr v. Wm. C. Crowell Co. 28 Cal. 2d 652, 654, 171 P. 2d 5, 7 (1946) (if the injury results "from a dispute arising out of the employment.")

[5] New Ellerslie Fishing Club v. Stewart, 123 Ky. 8, 13, 93 S. W. 598, 600 (1906) ("[w]here the agent begins a quarrel while acting within the scope of his agency, and immediately follows it up by a violent assault.")

[6] Metzler v. Layton, 373 Ill. 88, 91, 25 N. E. 2d 60, 61 (1939) (if the relationship of principal and agent "existed at the time of and in respect to the particular transaction out of which the injury arose.")

[7] Seaboard Air Line Ry. Co. v. Glenn, 213 Ala. 284, 104 So. 548, 549 (1925) ("done in and about the business or duties assigned" or "within the zone of duty measured by the work committed to him.")

[8] Son v. Hartford Ice Cream Co. 102 Conn. 696, 701, 129 A. 778, 780 (1925) (argument and assault being "one continuous transaction.")

[9] Kornec v. Mike Horse Min. & Mill. Co. 120 Mont. 1, 10, 180 P. 2d 252, 257 (1947) ("whether the act complained of arose out of and was committed in prosecution of the task the servant was performing for his master.")

members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.