**Paul J. HAGEN, plaintiff, Burmeister & Associates, Inc., Appellant,**

v.

**AMERICAN AGENCY, INC., Respondent.**

No. C3-00-496.

Court of Appeals of Minnesota.

Oct. 17, 2000.

Paul J. Hagen, Deep Haven, MN (pro se appellant).

Eric J. Magnuson and Marc A. Al, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN; and Rodney J. Mason, Chandler and Mason, Ltd., St. Paul, MN (for appellant Burmeister & Associates, Inc.).

Joseph M. Sokolowski and David A. Orenstein, Parsinen, Kaplan, Rosberg & Gotlieb, P.A., Minneapolis, MN; and Leon R. Erstad, Erstad & Riemer, P.A., Minneapolis, MN (for respondent American Agency, Inc.).

Considered and decided by TOUSSAINT, Chief Judge, AMUNDSON, Judge, and STONEBURNER, Judge.

## OPINION

AMUNDSON, Judge

Paul Hagen brought a declaratory judgment action after his former employer, appellant Burmeister & Associates, Inc., accused him of violating a non-compete agreement by soliciting former clients. The district court determined that Hagen breached the covenant not to compete and misappropriated trade secrets, but held that Hagen's current employer, respondent American Agency, Inc., was not liable. In the first appeal, holding American Agency, Inc. liable for Hagen's violation of the Trade Secrets Act if the misappropriation occurred in the course and scope of employment, this court reversed. After remand, the district court found that the misappropriation was not within the course and scope of employment. Burmeister now appeals.

## FACTS

On October 10, 1991, Hagen sold his insurance agency to Burmeister & Associates, Inc. (Burmeister). This sale included three contracts: an asset purchase agreement, a producer agreement, and a consulting agreement. Both the producer and consulting agreements contained covenants not to compete, which were effective until February 2001. They also agreed that Hagen would not disclose account information on a list of policyholders that Burmeister was purchasing. Hagen worked with Burmeister as an independent contractor and consultant after the sale, and on November 1, 1992, he became an employee of Burmeister.

In November 1994, while still employed by Burmeister, Hagen contacted American Agency, Inc. (American Agency), regarding prospective employment. Hagen discussed and provided copies of his covenants with Burmeister to American Agency's lawyers. He informed American Agency that Burmeister gave him permission to solicit insurance business from close family and friends upon his departure. In December 1994, Hagen again discussed his non-compete agreements with American Agency. American Agency hired Hagen and he began working for them.

American Agency approved a draft of a letter that Hagen indicated he would use for the solicitation of business from close friends and family members. The next day, Hagen began to send letters to former clients, many of whom were later determined to be outside of his "close friends and family." American Agency never requested to see the list of those Hagen was soliciting, nor did they approve this list; Hagen never shared his planned solicitation list before solicitation letters were mailed. It was later determined that of Burmeister's 1000–name policyholder list, approximately 50 people could be classified as Hagen's "close friends and family." Hagen actually solicited approximately 250 of the 1000 names on the list. American Agency first learned of the extent of Hagen's mailings when Burmeister's attorney contacted them.

Hagen commenced this action against Burmeister for declaratory judgment, contending that the contracts he signed in conjunction with the asset sale did not prohibit him from competing with Burmeister. Burmeister counterclaimed, arguing that by soliciting clients from his policyholder list, Hagen breached the non-compete and non-disclosure provisions of the contracts and violated the Minnesota Trade Secrets Act (MTSA). It also filed and served a third-party complaint against American Agency for tortious interference, claiming that American Agency had encouraged Hagen to breach his non-compete and non-disclosure obligations.

The district court found Hagen violated the covenant not to compete and the MTSA. But the court dismissed all claims against American Agency, concluding that American Agency had no reason to know that Hagen's actions violated his non-compete agreement with Burmeister.

On appeal, this court held that the district court erred when it dismissed Burmeister's MTSA claim against American

Agency, requiring a determination on retrial,

> whether Hagen was acting within the course and scope of his new employment when he mailed his solicitation letter to individuals listed on the confidential customer list.

*Hagen v. Burmeister & Assoc., Inc.*, No. C8–98–864, 1999 WL 31130, at *4 (Minn. App. Jan.26, 1999).

The parties again filed cross-motions for summary judgment and the district court held that it could not "find that American [Agency] knew or ratified [Hagen's] conduct," and therefore should not be held liable for his misappropriation of secrets. The district court held that American Agency had not authorized Hagen to solicit customers on the policy list other than close friends and family, and had not ratified the unauthorized mailing. The district court found that Hagen's unauthorized conduct was not "so incidental to conduct authorized as to be within the scope of the employment." This appeal followed.

## ISSUE

Is an employee acting within the course and scope of his employment, when on his new job, he solicits more of his former employer's customers than permitted by a non-compete agreement, the details of which his current employer knew?

## ANALYSIS

■ Burmeister challenges the district court's decision to grant summary judgment on the basis of its conclusion that, as a matter of law, Hagen was not acting within the course and scope of his employment with American Agency when he made improper solicitations. On an appeal from summary judgment where there are no genuine issues of material fact, our inquiry is whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). This court is not bound by and need not give deference to the district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota*

*Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Similarly, a district court's rulings on mixed questions of law and fact are not binding on this court but are subject to independent review. *Meyering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

## I.

■ Under the principle of respondeat superior, an employer is vicariously liable for the torts committed by an employee within the course and scope of employment. *Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905, 910 (Minn.1999). Here, the parties dispute the applicable test for determining whether Hagen's conduct fell within the course and scope of his employment. Two avenues of caselaw present themselves.

Burmeister contends that the applicable test is set forth in *Lange v. National Biscuit Co.*, 297 Minn. 399, 211 N.W.2d 783 (1973). The *Lange* test provides that an employer may be held vicariously liable for an employee's misconduct, even if intentional, when "(1) 'the source of the [misconduct] is related to the duties of the employee,' and (2) 'the [misconduct] occurs within work-related limits of time and place.'" *Fahrendorff*, 597 N.W.2d at 910 (quoting *Lange*, 297 Minn. at 404, 211 N.W.2d at 786).

■ But where, as here, an employer has specifically authorized an employee to compete with other businesses, and that employee goes too far in effecting that competition, our analysis is controlled by *Kasner v. Gage*, 281 Minn. 149, 161 N.W.2d 40 (1968). *Kasner* states that an employer cannot be liable for the tortious or criminal acts of an employee without "a supported finding that the act * * * is 'conduct of the same general nature as that authorized, or incidental to the conduct authorized.'" *Kasner*, 281 Minn. at 151–52, 161 N.W.2d at 42 (quotation omitted).

While both *Kasner* and *Lange* address the same general issue of an employer's

liability for the intentional torts of its employee, the facts of each case is unique. In *Kasner*, the court refused to hold a sales corporation liable for its agent's misappropriation of a competitor's records. *Kasner*, 281 Minn. at 156, 161 N.W.2d at 44. The sales agent had two people infiltrate a competitor to gain access to the competitor's records, and deliver them to him. *Id.* at 150–51, 161 N.W.2d at 41. In contrast, *Lange* and its progeny deal with employees who commit unauthorized assaults while they are working. *See, e.g., Fahrendorff*, 597 N.W.2d at 908 (sexual assault by an unsupervised employee in a group home); *Lange*, 297 Minn. at 400, 211 N.W.2d at 783 (physical attack); *Marston v. Minneapolis Clinic of Psychiatry and Neurology*, 329 N.W.2d 306, 307 (Minn. 1982) (sexual contact). Clearly, Hagen's misappropriation is much more akin to the theft in *Kasner* than the assault in *Lange*. Accordingly, the district court did not err in relying on *Kasner*.

## II.

■ The district court did, however, err in its application of *Kasner*'s principles to this case. In determining whether the act is within the course and scope of employment, the *Kasner* court considered the following factors:

> (a) whether or not the act is one commonly done by such servants;
>
> * * *
>
> (c) the previous relations between the master and the servant;
>
> * * *
>
> (e) whether or not the act is outside the enterprise of the master
>
> * * *
>
> (f) whether or not the master has reason to expect that such an act will be done;
>
> (g) the similarity in quality of the act done to the act authorized;
>
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
>
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
>
> (j) whether or not the act is seriously criminal.

281 Minn. at 152, 161 N.W.2d at 42 (quoting Restatement (Second) of Agency § 229(2) (omissions in original)).

■ Application of these factors to this case compel a finding of vicarious liability. Solicitation letters are very common in the insurance industry. American Agency argues that *improper* solicitations are not common in the insurance industry, but this argument misconstrues the nature of this first inquiry and begs the question. Vicarious liability in these cases is not limited to situations where intentional torts are common.

The previous relations between American Agency and Hagen indicate that American Agency was aware of the terms of Hagen's non-compete agreement. The fact that Hagen was a new employee is not significant here because American Agency was aware of the narrow distinction Hagen would be making when selecting which former clients to solicit.

Hagen's solicitation was entirely within the enterprise of American Agency. In fact, the actual text of the solicitation letter was expressly authorized by American Agency, as was the sending of the letter to Hagen's friends and family.

American Agency, knowing that the area of authorized solicitation was vaguely defined, had reason to expect that Hagen might not correctly determine what constituted "close friends and family." They specifically met with Hagen to discuss the limits of Hagen's non-compete agreement.

Hagen's improper solicitation was identical in nature to that authorized—only the quantity differed. The solicitation was only improper because it was sent to more people than authorized, not because it was a different letter. The fact that some

were sent to individuals in the penumbra outside of Hagen's close friends and family does not radically change the character of the act. Although the letters can be distinguished on the basis of whether or not, objectively, they were authorized, the authority to send solicitations to close friends and relatives was undoubtedly vague and the terms painfully indescript. After all, when does a business acquaintance become a friend?

It is of importance that American Agency alone provided the entirety of resources by which the harm was done. American Agency supplied the stationary, postage, and envelopes. The letter was composed and sent from American Agency. The misconduct was accomplished entirely through its officers.

The district court focused specifically on American Agency's lack of knowledge or approval of the improper solicitations. But if courts were "to predicate liability in respondeat superior cases upon a showing that the employer should have reasonably anticipated the employee's specific misconduct, [the] distinction [between direct and vicarious liability] would be lost." *Fahrendorff*, 597 N.W.2d at 912. If American Agency had known or approved of the improper solicitations, there would be no respondeat superior issue—they would be directly liable for the improper solicitation.

To be sure, this case is distinguishable from *Kasner*. But in its difference, it is all the more compelling a circumstance to find liability. In *Kasner*, the agent was simply a sales agent for a large corporation who owned his own business equipment, paid his own rent and utilities, hired and trained his own employees, fixed their working conditions, and paid their salaries or commissions. *Kasner*, 281 Minn. at 154, 161 N.W.2d at 43. He had great autonomy in the way he ran his business. *Id.* The court found that the autonomy of the agent precluded a finding that the agent's misappropriation of a local competitor's records was within the scope of such agency. *Id.* at 153–54, 161 N.W.2d at 43.

In contrast, here, Hagen did not operate his own insurance agency but worked in American Agency's office and was subject to direct supervision. In *Kasner*, the employer was oblivious to the agent's activities because the agent was managing a largely autonomous local office for a national corporation. Here, Hagen was a supervised employee, but despite being fully aware of the conditions of Hagen's non-compete clause, American Agency simply failed to supervise the solicitation.

Furthermore, in *Kasner*, the agent engaged in an elaborate plan to steal his competitor's trade secrets and employed methods that were completely outside of the regular business practices of a reputable magazine sales agent. *Id.* at 150–51, 161 N.W.2d at 41. The *Kasner* court noted that "[t]he quality of the act [could] hardly be found to be of the general nature of the sales activity authorized by [the sales corporation] or reasonably incidental to such activity." *Id.* at 155, 161 N.W.2d at 44. Here, of course, the nature of Hagen's improper solicitation was identical to that of the authorized solicitation and differed only in magnitude. Hagen did not achieve his misappropriation though unpredictable trickery, instead, he informed American Agency of the non-compete agreement, the limited exception, and then simply acted beyond that exception.

American Agency knew what information Hagen possessed and knew what the limits of his non-compete agreement were. They didn't know exactly who on the list were appropriate for solicitation. Ignorance of this significant fact should have alerted them to supervise Hagen. Accordingly, Hagen was acting within the scope of his employment when he solicited clients in violation of his non-compete agreement with Burmeister.

## DECISION

The district court erred in granting summary judgment in favor of American

Agency erroneously concluding that, as a matter of law, Hagen was not acting within the course and scope of his employment when he mailed more solicitations than he was authorized to send.

**Reversed.**