Lisa OLSON, et al., Respondents,

v.

FIRST CHURCH OF NAZARENE, et al., Defendants,

Mervin Leroy Kelley, Defendant,

The Minnesota District Church of the Nazarene, Appellant.

No. C8–02–1941.

Court of Appeals of Minnesota.

May 20, 2003.

Mark A. Wendorf, Cindy Waldt, Reinhardt and Anderson, St. Paul, for respondents Olsons.

Thomas E. McEllistrem, Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, for appellant.

Considered and decided by STONEBURNER, Presiding Judge, LANSING, Judge, and KLAPHAKE, Judge.

## O P I N I O N

STONEBURNER, Judge.

The Minnesota District Church of the Nazarene (the District) appeals the district court's denial of its motion for summary judgment. The District argues that because the claims of respondents Lisa and Jay Olson arise from the context of pastoral counseling, the First Amendment to the United States Constitution and art. I, § 16 of the Minnesota Constitution prohibit the court from exercising jurisdiction over Olsons' claims. We affirm the district court's denial of summary judgment for the claims of negligent supervision, negligent retention, and vicarious liability, and we reverse the district court's denial of summary judgment for the claim of intentional infliction of emotional distress.

## FACTS

Respondents Lisa and Jay Olson were members of the First Church of the Nazarene in Fergus Falls and were friends of the former pastor, defendant Mervin Kelley. The District is the regional head of the Church of the Nazarene. In 1992, Lisa Olson began an ongoing, private spiritual-counseling relationship with Pastor Kelley. From 1996 to 1999, Lisa Olson and Kelley were involved·in a sexual relationship. When church officials became aware of the relationship, the District confronted Kelley, who resigned after voluntarily forfeiting the credentials previously bestowed on him by the District that had allowed him to be hired as First Church's pastor. Church officials revealed Lisa Olson's name and relationship with Kelley to the congregation during the explanation of Kelley's resignation.

Kelley was subsequently convicted of criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344, subd. 1($l$)(ii) (2000), which provides, in relevant part that:

A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if * * * the actor is * * * a member of the clergy, the complainant is not married to the actor, and * * * the sexual penetration occurred during a period of time in which the complainant was meeting on an ongoing basis with the actor to seek or receive religious or spiritual advice, aid or comfort in private. Consent by the complainant is not a defense.

Lisa Olson and Jay Olson, in separate complaints that have been consolidated, sued Kelley, First Church, the District, and the church's national organization, the Board of General Superintendents. Kelley never answered the complaints. The Olsons settled with the local church and the national organization. Only the claims against the District remain.

The Olsons claim that the District, as Kelley's employer, is vicariously liable for Kelley's battery of sexual penetration, and is liable for negligent retention and negligent supervision of Kelley. Lisa and Jay Olson also claim intentional infliction of emotional distress stemming from the disclosure of Lisa's name to the congregation.[1] The District moved for summary judgment, arguing that the Establishment Clause of the First Amendment to the United States Constitution and art. 1, § 16 of the Minnesota Constitution preclude the exercise of subject-matter jurisdiction by the district court over the Olsons' claims. The district court denied summary judgment, concluding that the claims can be resolved by applying neutral principles of law without regard to religion and that examination of church documents to determine the relationship between the District and Kelley does not pose a risk of excessive state entanglement in religion. This appeal followed.

## ISSUES

1. Does the district court have subject-matter jurisdiction to determine whether an employment relationship existed between the District and Kelley?

2. If the District is determined to have been Kelley's employer at the relevant time, does the district court have jurisdiction over the Olsons' claims against the

---

1. The Olsons' claim against the District for negligence based on breach of an alleged duty to provide her with a safe environment for spiritual growth and Jay Olson's claim for loss of consortium were not addressed in the summary-judgment motions and are not before us.

District for negligent supervision, negligent retention, and vicarious liability?

3. Does the district court have subject-matter jurisdiction over Olson's claims against the District for intentional infliction of emotional distress based on the announcement of Lisa Olson's name to the congregation in connection with the explanation of Kelley's resignation?

## ANALYSIS

The scope of this appeal is limited to the issue of jurisdiction and does not reach the merits of the claims made by Lisa and Jay Olson. Generally, an interlocutory appeal may not be taken from a denial of summary judgment, but an issue relating to subject-matter jurisdiction can be appealed immediately. *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832–33 (Minn.1995). Subject-matter jurisdiction is a question of law reviewed de novo. *Odenthal v. Minn. Conference of Seventh–Day Adventists*, 649 N.W.2d 426, 434 (Minn.2002) (*Odenthal I*). The state and federal constitutions limit a secular court's exercise of jurisdiction over disputes involving religious institutions. *Id.*

### A. Federal Constitutional Considerations

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment applies to judicial power. *Odenthal I*, 649 N.W.2d at 435.[2]

The District asserts that resolving the Olsons' claims would require the court to become impermissibly entangled with religion. But the Establishment Clause is not an automatic barrier to government action. *Black v. Snyder*, 471 N.W.2d 715, 721 (Minn.App.1991) (stating that excessive entanglement is ultimately a question of degree), *review denied* (Minn. Aug. 29, 1991). Government action is not prohibited by the Establishment Clause if the action (1) has a secular purpose; (2) neither inhibits nor advances religion as its primary effect; and (3) does not create excessive entanglement between church and state. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The Establishment Clause is not implicated where neutral principles of law, developed and applied without particular regard to religious doctrines, establish the applicable standard of care. *Odenthal I*, 649 N.W.2d at 436.

### B. State Constitutional Considerations

The Freedom of Conscience Clause of the Minnesota Constitution provides:

> The right of every man to worship God according to the dictates of his own conscience shall never be infringed; * * * nor shall any control of or interference with the rights of conscience be permitted or any preference be given by law to any religious establishment or mode of worship; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state * * *.

Minn. Const. art. I, § 16.

The language of the Minnesota Constitution regarding religion "is of a

---

**2.** The District asserts but does not argue or present any authority to support an argument that the Free Exercise Clause of the U.S. Constitution precludes Olsons' claims; there-fore we decline to address the Free Exercise claim. Issues not briefed on appeal are waived. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn.1982).

distinctively stronger character than the federal counterpart" and precludes "even an infringement on or an interference with religious freedom." *State v. Hershberger,* 462 N.W.2d 393, 397 (Minn.1990) (stating that the Minnesota Constitution expressly grants affirmative rights in the area of religious worship while the federal constitution simply attempts to restrain government action). The state constitution protects the right to free exercise of religion and prohibits the establishment of religion or giving of a preference to any religion. *Odenthal I,* 649 N.W.2d at 442.

The test for determining whether government action violates the Freedom of Conscience Clause of the Minnesota Constitution has four prongs: (1) whether the belief is sincerely held; (2) whether the state action burdens the exercise of religious beliefs; (3) whether the state interest is overriding or compelling; and (4) whether the state uses the least restrictive means. *Hershberger,* 462 N.W.2d at 398. Whether a belief is sincerely held is not an issue in this case. And because the legislature has criminalized the conduct of the cleric complained of in this case, we conclude that, as a matter of law, the state has a compelling interest. The inquiry in this case is whether the exercise of jurisdiction burdens the exercise of religious beliefs and if so, whether the state has used the least restrictive means to vindicate its interests.

## C. Application of constitutional law to claims

### 1. Determining the existence of an employment relationship

Lisa Olson's claims against the District for vicarious liability, negligent supervision, and negligent retention all depend on a determination that the District was Kelley's employer. The District argues that an inquiry by the court into its relationship with Kelley would excessively entangle the state with religion. We disagree.

Whether an employment relationship exists is an issue of fact when the evidence is disputed. *Stenvik v. Constant,* 502 N.W.2d 416, 420 (Minn.App.1993), *review denied* (Minn. Aug. 24, 1993).

[F]actors traditionally used to determine the nature of a work relationship are: (1) the right to control the means and manner of performance; (2) the mode of payment; (3) furnishing of materials and tools; (4) control of premises where work is performed; and (5) right of employer to hire and discharge.

*Id.* (citation omitted). The right to control is the most significant factor. *Id.* These factors are neutral principles of law that can be applied without regard to religious doctrines because the court need not develop a legal standard based on religious practices and need not interpret religious doctrine to discover whether the traditional employment factors apply to the relationship between the District and Kelley. *See Odenthal I,* 649 N.W.2d at 436. The inquiry is limited to how the factors apply to the relationship, and does not involve an examination of the entity's doctrines.

At oral argument, the District conceded that the court is not constitutionally precluded from applying neutral principles of employment laws to the structure of the church as set out in the church's governance documents to determine whether an employment relationship exists between a church entity and a pastor. We agree. A court is not precluded from examining church documents in purely secular terms that do not require reliance on "religious precepts" to determine their meaning. *Jones v. Wolf,* 443 U.S. 595, 604, 99 S.Ct. 3020, 3026, 61 L.Ed.2d 775 (1979). The court must accept, and cannot chal-

lenge, the governance established in the documents. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 720, 96 S.Ct. 2372, 2385–6, 49 L.Ed.2d 151 (1976); *Piletich v. Deretich*, 328 N.W.2d 696, 700 (Minn.1982) (holding that a matter of property ownership can be constitutionally examined by court applying neutral principles of law to terms of church documents). The Establishment Clause does not preclude the district court's exercise of subject-matter jurisdiction to determine whether the District was Kelley's employer and does not preclude examination of church documents to facilitate that inquiry.

The District has not explained, and we cannot discern, how such an examination of the relationship between the District and the pastor to determine if the District was Kelley's employer would burden the exercise of religion in violation of art. I, § 16 of the Minnesota Constitution. We therefore conclude that the state constitution does not preclude this inquiry. The district court correctly concluded that it has subject-matter jurisdiction to determine whether an employment relationship existed between the District and Kelley.

Only if the District is determined to have been Kelley's employer at the relevant time will the court be required to examine the employment-related claims of Lisa and Jay Olson, but we must explore whether such further inquiry is constitutionally permitted.

### 2. Employment-related claims

#### a. vicarious liability for battery

■ The Olsons claim that, as Kelley's employer, the District is vicariously liable

for Kelley's specific battery of sexual penetration committed against Lisa Olson.[3] It is only the narrow conduct (sexual penetration,) proscribed by the Minn.Stat. § 609.344, subd. 1(*l* )(ii), that is the focus of the claim, not the broader common-law concept of unconsented-to touching. The District concedes that Kelley committed sexual penetration. The District argues that because the Olsons rely only on Kelley's position as a cleric and the ongoing, private spiritual-counseling relationship to argue that Lisa Olson did not consent to the sexual penetration, the court would become impermissibly entangled with religion in order to determine the issue of consent.

The district court rejected the Olsons' argument that Kelley's criminal conviction is dispositive of the consent issue, and held that consent is a question of fact to be addressed at trial. We recognize a potential for impermissible entanglement of the court with religion if the Olsons were to argue that the content of the spiritual advice affected her capacity to consent. But the Olsons acknowledge that such an inquiry is constitutionally prohibited and argue that inquiry into the religious content of the relationship is not required. The Olsons assert that it is the existence of the private counseling relationship with the pastor, not the content of the counseling, that affected her ability to consent, as was recognized by the legislature when it crafted Minn.Stat. § 609.344, subd. 1(*l* )(ii), criminalizing Kelley's conduct.

■ The District argues that the state cannot constitutionally place clerics

---

**3.** The District asserts that the claims against Kelley constitute claims for clergy malpractice, a cause of action that has never been recognized in Minnesota or any other jurisdiction. *See Odenthal I*, 649 N.W.2d at 441 (indicating that clergy malpractice claims are barred by the First Amendment). This argu-

ment was not made to the district court, which was informed only that Olsons have carefully framed their complaint to avoid a claim of clergy malpractice. We agree that the Olsons have carefully framed their claims so that they are not claims for clergy malpractice, so that issue is not before us.

in a class that makes sexual penetration during ongoing, private spiritual-counseling illegal without excessive entanglement with religious doctrine or burdening religious practice. But the District does not explain how entanglement occurs or how religious practice is burdened by an inquiry into whether sexual penetration occurred during ongoing, private counseling when an inquiry into the content of such counseling is precluded. Because the court cannot constitutionally inquire into church doctrine, the jurisdiction of the court to inquire into the consent issue is limited by the federal and state constitutions to a determination of whether the *existence* of an ongoing, private counseling relationship with a cleric precludes the counselee's ability to consent to sexual penetration by the cleric. We trust the district court's ability to prohibit any examination of, or inference about, the content of such counseling. We conclude that there is not a risk of entangling the court with religious doctrine or a burdening of religious practice by an exercise of jurisdiction over the limited issue of whether the existence of the relationship precludes the counselee's consent to sexual battery.

Under the 'well-established principle' of respondeat superior, 'an employer is vicariously liable for the torts of an employee committed within the course and scope of employment.'

*Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905, 910 (Minn.1999) (citing *Schneider v. Buckman*, 433 N.W.2d 98, 101 (Minn.1988)). As the supreme court has interpreted the doctrine in Minnesota:

an employer may be held liable for even the intentional misconduct of its employees when (1) 'the source of the attack is related to the duties of the employee,' and (2) 'the assault occurs within work-related limits of time and place.'

*Id.* (citing *Lange v. National Biscuit Co.*, 297 Minn. 399, 404, 211 N.W.2d 783, 786 (1973)). And an employee's act need not be committed in furtherance of his employer's business to fall within the scope of his employment. *Id.*

The master is liable for any such act of the servant which, if isolated, would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as one indivisible tort.

*Id.* (citations omitted). In determining that a clinic-employer of a psychologist could be held liable for damages caused by the psychologist engaging in sexual misconduct with patients at the clinic during and immediately after therapy, the supreme court noted that:

[T]he sexual misconduct would not have occurred but for the psychiatrist's employment, occurred during or after regular therapy sessions, and was preceded by normal therapeutic massage * * * [and] there was "testimony that sexual relations between a psychologist and a patient is a well-known hazard, and thus, to a degree, foreseeable and a risk of employment."

*Id.* (citations omitted).

The factors for determining whether the conduct occurred within the scope of employment are neutral principles of law that can be applied to the facts of a case involving a religious employer without any regard to the particular religious doctrines of the employer. *See Odenthal v. Minn. Conference of Seventh–Day Adventists (Odenthal II)*, 657 N.W.2d 569, 577 (Minn. App.2003) (holding that a district court has subject-matter jurisdiction over a claim of vicarious liability for negligent secular counseling against a religious institution) *review denied*, (Minn. Mar. 18, 2003). An examination of the Olsons' claims does not

involve an inquiry into what the cleric's role is within the church or his duties generally. The district court, in this case, need only determine whether Kelley, when he sexually penetrated Lisa Olson, was providing ongoing, private spiritual advice, aid, or comfort to Lisa Olson in his capacity as a cleric and the district court does not need to examine the content of the advice, aid, or comfort given. We conclude, therefore, that the Establishment Clause does not preclude jurisdiction over the claim of vicarious liability. The District has failed to articulate how an examination by the court of whether sexual penetration occurred within the scope of employment involves any inquiry into church doctrine or procedure, and we conclude that the inquiry does not limit or burden the exercise of religion in violation of the state constitution. The district court correctly concluded that it has subject-matter jurisdiction over the claim against the District for vicarious liability.

### b. Negligent retention

 In Minnesota, generally, an employer has the duty "to refrain from retaining employees with known dangerous proclivities." *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn.App.1993), *review denied* (Minn. Apr. 20, 1993). An employer may be liable for negligent retention when

> during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.

*Id.* at 423 (citation omitted). Liability for this cause of action is not dependent on whether the employee's act was within the scope of employment. *Id.* at 422.

The standards used to evaluate a claim of negligent retention are based on neutral principles of law. The unfitness alleged in this case is commission of the act of sexual penetration and does not require any examination of church doctrine or practice. The district court need evaluate only what the District knew or should have known about Kelley's propensity to engage in sexual penetration with persons who sought spiritual or religious advice from him, and, if there was such knowledge, whether the District acted reasonably to prevent such conduct toward Lisa Olson. *See Odenthal II*, 657 N.W.2d at 575 (holding that claims against church employer for negligent retention of pastor who allegedly engaged in negligent secular counseling can be resolved through application of neutral principles of law without violating federal or state constitutions). The issue is not negligent retention as it relates to Kelley's provision of spiritual advice. The issue for the district court is whether the District acted reasonably after it became aware or should have become aware of any problems with Kelley sexually penetrating persons being privately given spiritual advice, aid, or comfort. This inquiry does not pose any risk of entanglement with religious doctrine or procedure and no burdening of religious practice. The district court correctly concluded that it has jurisdiction over the claims against the district for negligent retention.

### c. Negligent supervision

 Unlike a claim of negligent retention, negligent supervision derives from the doctrine of respondeat superior, so that a plaintiff must prove that the employee's action occurred within the scope of employment. *M.L. v. Magnuson*, 531 N.W.2d 849, 858 (Minn.App.1995), *review denied* (Minn. Jul. 20, 1995). Negligent supervision is the failure of an employer to exercise ordinary care in supervising the employment relationship so as to prevent

foreseeable misconduct of an employee from causing harm to others. *Id.*

As with the claim of vicarious liability, the claim of negligent supervision in this case does not involve an examination by the court of the religious duties of a cleric or the content of spiritual advice, aid, or comfort given that would require an impermissible inquiry into church doctrine. The inquiry is only into the reasonableness of the employer's supervision to prevent a cleric's sexual penetration of persons who are receiving ongoing, private spiritual advice, aid, or comfort from a cleric. The supreme court has previously determined that sexual relations are a well-known hazard of a secular counseling relationship. *Marston v. Minneapolis Clinic of Psychiatry & Neurology,* 329 N.W.2d 306, 311 (Minn.1982). Whether sexual penetration of a person by a cleric while providing ongoing, private spiritual advice, aid, or comfort to that person is foreseeable has not been determined. But the District has not established that there is any need to inquire into or interpret church doctrine to make such a determination. As discussed above, it is only the existence of the relationship, not the content of advice, aid, or comfort given, that can be constitutionally examined, but with this limitation, there is no risk of entanglement of the court with religious doctrine or burden on the exercise of religion. The district court correctly concluded that it has subject-matter jurisdiction over the claim of negligent supervision.

### 3. Intentional infliction of emotional distress

To establish a claim of intentional infliction of emotional distress, a plaintiff must show that (1) the conduct of the defendant was so extreme and outrageous that it passed the boundaries of decency and is utterly intolerable to the civilized community; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress to plaintiff; and (4) the distress was so severe that no reasonable person could be expected to endure it. *Hubbard v. United Press Int'l,* 330 N.W.2d 428, 438–39 (Minn.1983). Lisa and Jay Olson have asserted this claim directly against the District for announcing Lisa Olson's name to the congregation when the congregation was told the reason for Kelley's resignation.

We have previously affirmed dismissal of a pastor's claim against his employer-church for intentional infliction of emotional distress as involving excessive entanglement and precluded by the Establishment Clause. *Singleton v. Christ The Servant Evangelical Lutheran Church,* 541 N.W.2d 606, 613 (Minn.App.1996) (stating that to determine whether church intended to cause pastor emotional distress, court would need to review motivations for church's actions, fundamentally connected to issues of church doctrine and governance), *review denied* (Minn. Mar. 19, 1996). We note that some aspects of the *Singleton* decision have been effectively overruled by *Odenthal I,* which expanded the neutral-principles-of-law analysis beyond church property and membership. And the Olsons argue that neutral principles of law can be applied to this claim as well as to the other claims asserted. But

> [w]hen claims involve "core" questions of church discipline and internal governance, the [United States] Supreme Court has acknowledged that the inevitable danger of governmental entanglement precludes judicial review.

*Black,* 471 N.W.2d at 720 (citing *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)). We conclude that inquiry into a religious entity's determination of what information about church members its congregation is entitled to know and how that

information is provided to the congregation risks excessive entanglement of the court with church doctrine and procedure. The Olsons' claims of intentional infliction of emotional distress are therefore barred by the Establishment Clause of the First Amendment to the United States Constitution. Because we hold that the First Amendment precludes an exercise of jurisdiction over this claim, we do not reach arguments based on the Minnesota Constitution. The district court erred by determining that it has jurisdiction over the Olsons' claims for intentional infliction of emotional distress.

## DECISION

The district court has subject-matter jurisdiction to determine whether an employer-employee relationship exists between a religious entity and a cleric and can constitutionally examine the governance documents of a religious entity in secular terms for the purpose of applying neutral principles of law to determine whether an employment relationship existed. And the district court has subject-matter jurisdiction over claims that a religious employer is vicariously liable, liable for negligent retention, or liable for negligent supervision for a cleric's sexual penetration of a person while the cleric was providing ongoing, private spiritual advice, aid, or comfort to that person. The district court's denial of summary judgment for lack of subject-matter jurisdiction over the Olsons' claims against the District for negligent supervision, negligent retention, and vicarious liability is affirmed.

The Establishment Clause of the First Amendment to the United States Constitution precludes the district court's jurisdiction over the Olsons' claims of intentional infliction of emotional distress based on the release of Lisa Olson's name to the congregation in connection with the reason for the pastor's resignation. The district court's denial of summary judgment based on lack of subject-matter jurisdiction for the claim of intentional infliction of emotional distress is reversed.

**Affirmed in part and reversed in part.**