C.B., a minor, by her mother and natural guardian, L.B., and L.B., individually, Appellants,

v.

EVANGELICAL LUTHERAN CHURCH IN AMERICA, Respondent,

Southwestern Minnesota Synod of the Evangelical Lutheran Church in America, Respondent,

Immanuel American Lutheran Church, Respondent,

Oscar Stene, Respondent,

Pearl Stene, Respondent.

No. A06–295.

Court of Appeals of Minnesota.

Jan. 16, 2007.

Jeffrey R. Anderson, Kathleen P. O'Connor, Jeff Anderson & Associates, P.A., St. Paul, MN, for appellants.

Daniel J. Connolly, Faegre & Benson, LLP, Minneapolis, MN, for respondent Evangelical Lutheran Church in America.

Patrick D. Reilly, Erstad & Riemer, P.A., Minneapolis, MN, for respondent Southwestern Minnesota Synod of the Evangelical Lutheran Church in America.

Richard P. Mahoney, Victor Lund, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, MN, for respondent Immanuel American Lutheran Church.

Oscar Stene, Pearl Stene, Fulda, MN, pro se respondents.

Considered and decided by HALBROOKS, Presiding Judge, RANDALL, Judge, and STONEBURNER, Judge.

## OPINION

RANDALL, Judge.

Appellants C.B. and L.B., daughter and mother, appeal from summary judgment dismissing their claims for negligent supervision, respondeat superior, and ratification against respondent churches. This action arose in connection with the sexual abuse of C.B. by respondent Oscar Stene, an ordained Lutheran minister in good standing who, although retired, occasionally presided over services in respondents' churches. Appellants argue that (1) the district court erred by dismissing their respondeat superior claim because genuine issues of material fact remain as to whether respondent Stene was employed by respondent churches and whether his conduct was foreseeable; (2) the district court erred by dismissing appellants' negligent-supervision claim because genuine issues of material fact remain as to whether respondent Stene's abuse was foreseeable and preventable; and (3) by its conduct following notification of respondent Stene's abuse, the churches ratified Stene's acts

sufficiently to become liable for the harm done to appellant C.B. Respondents argue that appellants' claims are barred by the Establishment Clause and the Religious Freedom Clause because a resolution of appellants' claims would require this court to become impermissibly entangled with religion. We affirm.

## FACTS

This appeal stems from the sexual abuse of appellant C.B., a minor, by respondent Oscar Stene, a retired Lutheran minister. Oscar Stene was ordained a Lutheran minister in 1960, and served a congregation in Madison from 1960 through 1966. In 1966, Oscar Stene became the pastor of respondent Immanuel American Lutheran Church (IALC) in Fulda, where he served until 1978. Thereafter, Oscar Stene served as pastor of the South Blue Earth and North Blue Earth churches in Bricelyn, until he retired in 1991.

After retiring, Oscar Stene and his wife, Pearl Stene, returned to Fulda to live at their farm. Although officially retired, Oscar Stene served as interim pastor at several local congregations from 1991 through 2002. In fact, Oscar Stene filled such a position at IALC from 1991 to 1992. He also served as the fill-in pulpit supply minister several times at various churches in the region between 1991 and 2002. A fill-in minister was needed when the regular pastor was on vacation or not available for any other reason. Oscar Stene's duty as the fill-in minister was to conduct the one-hour Sunday morning worship service and he received a $100 honorarium for each service.

C.B.'s mother, appellant L.B., became acquainted with the Stenes in 1974 when Oscar Stene was the pastor at IALC. L.B.'s fiancée, Curt, along with his family, were close friends with the Stenes and, over the course of the next few years, L.B. also developed a close relationship with the Stenes. L.B. would sometimes refer to the Stenes as her parents and, during the four years prior to her marriage to Curt, L.B. lived with the Stenes. When L.B. and Curt were married in 1979, Oscar Stene was chosen to perform the marriage ceremony.

After the Stenes moved to Bricelyn, the families had minimal contact with each other. During this time period, L.B. and Curt had two children, a daughter, C.B., and a son. When the Stenes returned to Fulda in 1991, they resumed their close relationship with L.B. and her husband, and began to develop a close relationship with C.B. and her brother. The Stenes often spent Christmas and birthdays with L.B. and her family, and the Stenes regularly babysat C.B. and her brother. The children also regularly visited the Stene farm to play with the animals. Eventually, C.B. began referring to Oscar Stene as "Grandpa Oscar" and Pearl Stene as "Grandma Pearl."

In late 1999 or early 2000, C.B. began occasionally spending the night at the Stenes. At about the same time, C.B. was having difficulty with her school work. Because Pearl Stene was a retired teacher, she offered to help C.B. improve her grades. L.B. agreed and C.B. went to the Stene's farm on numerous occasions for Pearl Stene's tutoring.

On June 18, 2002, after spending the previous evening at the Stenes, C.B. told L.B. that she had been sexually abused by Oscar Stene. According to C.B., she was touched inappropriately by Oscar Stene on June 17, 2002. C.B. also claimed that Oscar Stene engaged in similar conduct in 1998. It is undisputed that the incidents of sexual abuse occurred at the Stene farm.

After being informed of the abuse, L.B. and her husband initially sought the advice of Pastor Allan Bakke, the pastor of IALC at the time of the abuse. According to L.B., Pastor Bakke advised the family to "stay silent." Although Pastor Bakke disputes this allegation, police were not informed of the abuse until November 2002, when an unnamed person finally contacted the police about the incidents of abuse. Oscar Stene was subsequently charged in connection with the allegations and eventually pleaded guilty to second-degree criminal sexual conduct. Both Oscar Stene and Pastor Bakke were asked by the synod to resign.

In November 2003, C.B. instituted this civil action, through her parents, against Oscar and Pearl Stene, respondent Evangelical Lutheran Church in America (ELCA), respondent Southwestern Minnesota Synod of the Evangelical Lutheran Church in America (the Synod), and the IALC. The first six counts of the complaint are solely against Oscar Stene and/or his wife Pearl (the Synod did not participate in this appeal). The last four counts at issue are against the named church entities.

The respondent church entities are part of a specific structural network of the Evangelical Lutheran Church. The ELCA is a national organization that is involved in a number of ministries. A synod is a geographic unit of the ELCA assigned to congregations in its area. A congregation is a group of believers in a particular area, often referred to by the name of the local church. The relationships among the ELCA, the synod, and the congregation are governed by the constitution of the individual synod as well as the Constitution for Synods of the Evangelical Lutheran Church in America.

After discovery, respondents ELCA, the Synod, and the IALC (collectively respondents) moved for summary judgment. At the time of the summary judgment motion, appellants withdrew their claims against respondents for breach of fiduciary duty, fiduciary fraud, and duty to warn. Appellants retained their claims against respondents for vicarious liability and negligence. The district court granted respondents' motion for summary judgment, holding that there was no employment relationship between respondent churches and Oscar Stene. The district court also concluded that the abuse occurred outside of the work-related limits of time and place and were not related to his employment duties. The district court's order left the claims against the Stenes pending, and then entered a Rule 54.02 order to allow appellants to proceed with this appeal.

## ISSUES

I. Did the district court err by dismissing appellants' respondent superior claims?

II. Did the district court err by dismissing appellants' negligent supervision claim?

III. Did respondent churches' conduct, following notification of Oscar Stene's abuse, constitute ratification of the abuse for purposes of liability?

IV. Are appellants' claims barred by the Establishment Clause and the Religious Freedom Clause?

## ANALYSIS

Summary-judgment motions are granted when the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). On a motion for summary judgment, "a court may not weigh the evidence or make factual determinations." *State ex rel. Hatch v.*

*Allina Health Sys.*, 679 N.W.2d 400, 406 (Minn.App.2004) (quoting *Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.*, 535 N.W.2d 337, 341 (Minn.1995)). "[T]he reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761. A reviewing court need not defer to a district court's decision on a pure question of law. *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

## I.

 Under "respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of employment." *Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn.1999) (quotation omitted).

Whether an employment relationship exists is an issue of fact when the evidence is disputed. [F]actors traditionally used to determine the nature of a work relationship are: (1) the right to control the means and manner of performance; (2) the mode of payment; (3) furnishing of materials and tools; (4) control of premises where work is performed; and (5) right of employer to hire and discharge. The right to control is the most significant factor.

*Olson v. First Church of Nazarene*, 661 N.W.2d 254, 261 (Minn.App.2003) (citations and quotation omitted).

 Appellants argue that the district court erred by dismissing their respondeat superior claim because there are issues of material fact as to whether Oscar Stene was employed by respondent churches. The evidence as to the employment relationship issue is undisputed. The dispute concerns the application of the undisputed facts to the law. Thus, whether Oscar Stene was employed by respondent churches at the time of the abuse is a question of law. *See Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992) (stating that the application of law to undisputed facts is a question of law).

 With respect to the Evangelical Lutheran Church, the record reflects that when a local church needs a new pastor, the local synod makes recommendations from a "call roster" according to which pastors the synod believes might best fit the needs of the congregation. The congregation's board or its designated committee then interviews the prospective pastors and discusses with them the terms of employment. The congregation then votes before extending a call to a prospective pastor, and a two-thirds majority vote of those congregation members present is required to issue a call.

Once a congregation selects a pastor, the congregation sets the terms of the pastor's employment, including pay and benefits, as well as the place and time for services. The congregation also defines the role of its pastor and determines the pastor's duties. The congregation further supplies its pastor with a parsonage and determines how much vacation will be afforded to the pastor. Finally, the congregation is the body with the authority to fire its pastor and may do so by vote.

Appellants argue that an employment relationship existed between Oscar Stene and respondent churches because Oscar Stene was an ordained minister in good standing with the church and on the "clergy roster." Although appellants do not appear to dispute the congregation's relationship with its minister, appellants assert that evidence in the record demonstrates that the Synod and the ELCA exercised enough control over a pastor's ministry to prove an employment relationship existed

with those entities. Appellants argue that an employment relationship is reflected by evidence that the Synod and the ELCA determine who is qualified to be a minister and demand that ministers agree and abide by the Synod's and the ELCA's constitutions and by-laws. Appellants also contend that evidence that the ELCA and the Synod are involved in the disciplinary process of ministers, and can remove a minister from his or her position, further demonstrates that the ELCA and the Synod exercise significant control over a minister's performance.

There is evidence in the record tending to support appellants' legal argument (not on disputed fact issues—we are cognizant that on motions for summary judgment, the nonmoving party gets the benefit of the doubt and the benefit of rational inferences). Both the Synod and the ELCA have constitutions under which a minister must abide. There is evidence in the record that both the Synod and the ELCA can be involved in the disciplinary process. For example, testimony by church officials indicated that if the Synod or the ELCA became aware of inappropriate behavior by a minister, the church entities could request that the minister resign. If the pastor declined to resign, the ELCA and the Synod could use the process of discipline outlined in the constitutions to force his or her resignation. Nevertheless, the fact that the Synod and the ELCA set certain standards for Lutheran ministers, and can be involved in disciplinary proceedings, does not automatically mean a true employment relationship exists. Respondents reiterate from the district court's order an analogy between the facts here and the relationship between a lawyer and the Minnesota Supreme Court. The Minnesota Supreme Court, through the Rules of Professional Conduct, sets forth the rules and standards by which lawyers must adhere. If these rules are violated,

the Minnesota Supreme Court may discipline the responsible attorney. But this relationship between the supreme court and the disciplined attorney is not an employment relationship. There has to be something more. Such is the case here. The Synod and the ELCA have some limited control over the pastor. But, as noted, the congregation, not the umbrella entity, has the responsibility for hiring and firing the pastor, setting forth the terms and conditions of employment, supplying the pastor with parsonage, vacation and supplies, and paying the pastor. Based on the *Olson* factors, it is the congregation, not the Synod and the ELCA, which "employs" the minister.

Appellants also contend that respondent IALC was Oscar Stene's employer. We disagree. Between 1966 and 1978, Oscar Stene was the full-time pastor at IALC and at that time was considered an employee of the church. But Oscar Stene retired in 1991. The record reflects that when the IALC needed a fill-in pastor because the full-time pastor was unavailable, the church would contact a retired pastor, such as Oscar Stene, and request that he fill in. When Oscar Stene "filled-in" as a retired pastor, he was paid approximately $60–80 for each day that he provided his service. The IALC did not withhold taxes from Oscar Stene's paycheck and Stene was not provided with vacation or health benefits. The record shows that Oscar Stene occasionally served as a fill-in pastor at other churches rather than just the IALC. As a retired minister, Oscar Stene was more of an independent contractor than an employee of IALC.

The record shows that in light of his retired status, respondent church entities exhibited little control over Oscar Stene. The church entities' constitutions did mandate that even though retired, pastors like Stene were to abide by the moral and

ethical standards set forth in the constitutions. We can only note that, for example, a general statement that the Ten Commandments apply to both regular and retired ministers does not mean that under civil law, an employer-employee relationship must now exist. As a retired minister, none of the church entities were in a position to supervise Stene's conduct. There is nothing in the record indicating that Oscar Stene was involved in any of the "normal" duties required of non-retired ministers. Oscar Stene was under no obligation to accept a request to fill-in, and there is nothing in the record indicating that the IALC was obligated to contact Oscar Stene when a fill-in pastor was needed. Although Oscar Stene temporarily served as interim pastor at IALC shortly after he retired, his role as interim pastor occurred long before the abuse. We conclude that the district court did not err in holding that no employment relationship existed between Oscar Stene and the respondent church entities. Thus, because Oscar Stene was not an employee of any of the respondent church entities, respondents are not vicariously liable for Stene's abusive behavior.

■ If we were to conclude that an employment relationship existed between Oscar Stene and respondents, appellants' claims fail because the abuse did not occur within the scope of employment. See *Fahrendorff*, 597 N.W.2d at 910 (stating that there is liability only if the abuse occurred within the scope of employment). Under the doctrine of respondeat superior, "liability stems not from any fault of the employer, but from a public policy determination that liability for acts committed within the scope of employment should be allocated to the employer as a cost of engaging in that business." *Id.* The supreme court has interpreted the doctrine in Minnesota to hold an employer liable for even the intentional misconduct of its employees when "(1) the source of the attack is related to the duties of the employee, and (2) the assault occurs within work-related limits of time and place." *Id.* (quotation omitted). "[A]n important consideration in determining whether an act is related to the duties of employment is whether the act was foreseeable." *Hagen v. Burmeister & Assocs., Inc.*, 633 N.W.2d 497, 504 (Minn. 2001). When the evidence in the record is conclusive on all of the necessary elements or there is an absence of evidence to support a necessary element, no fact issue is presented for the jury and the scope of employment is determined as a matter of law. *See Lange v. Nat'l Biscuit Co.*, 297 Minn. 399, 404, 211 N.W.2d 783, 786 (1973).

Here, the record reflects that appellants' family was good friends with the Stenes. The parties often gathered for holidays, including Christmas and birthdays. The Stenes often babysat C.B. and her brother, and C.B. testified that she occasionally referred to Oscar and Pearl Stene as grandpa and grandma. At the time of the abuse, C.B. visited the Stene farm to play with the animals and to be tutored by Pearl Stene. The tutoring provided by Pearl Stene was in connection with C.B.'s school work and not for religious reasons. There is no allegation that C.B. went to visit Oscar Stene for any type of religious counseling or any other reason connected to his status as a retired minister. In fact, C.B. testified that she never attended any religious service conducted by Oscar Stene and knew the Stenes primarily as "family friends." Oscar Stene's conduct did not occur within the ambit of any type of church work, whether time or place.

## II.

Appellants argue that the district court erred in dismissing their negligent supervision claim because genuine issues of ma-

terial fact remain as to whether Oscar Stene's abuse was foreseeable and preventable. Appellants contend that Oscar Stene's abuse was foreseeable based on the following "red flags": (1) C.B.'s frequent overnight visits with the Stenes; (2) the Stenes' lavishing of inappropriate and expensive gifts on C.B.; and (3) on at least one occasion, C.B. had to be dragged, kicking and screaming, by her parents to the Stene car to spend time with the Stenes.

 "Negligent supervision derives from the doctrine of respondeat superior," so that a plaintiff must prove that the employee's action occurred within the scope of employment. *M.L. v. Magnuson,* 531 N.W.2d 849, 858 (Minn.App.1995), *review denied* (Minn. Jul. 20, 1995). To make out a successful claim for negligent supervision, the plaintiff must prove (1) "the employee's conduct was foreseeable;" and (2) "the employer failed to exercise ordinary care when supervising the employee." *Oslin v. State,* 543 N.W.2d 408, 415 (Minn.App.1996), *review denied* (Minn. Apr. 1, 1996). In negligence cases, "foreseeability" means a level of probability that would lead a prudent person to take effective precautions. *Fahrendorff,* 597 N.W.2d at 912. If the abusive behavior was objectively foreseeable, then the inquiry must focus on whether the employer took reasonable precautions, beforehand, to prevent the abuse. *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907, 911 (Minn. 1983).

 Here, appellants' negligent supervision claim fails because Oscar Stene was not an employee of the respondent church entities at the time of the abuse. Appellants have failed to provide any evidence that any of the respondent church entities were aware of the alleged "red flags." Even if respondents were aware of the alleged "red flags," appellants fail to establish how these "red flags" should have put respondents on notice of the abuse. In light of appellants' relationship with the Stenes, it would not be abnormal for C.B. to spend the night at the Stenes, or for the Stenes to buy nice gifts for somebody they considered to be their granddaughter. It is not abnormal for a teenager to put up a fuss when instructed that she spend time with a tutor to work on her school work. There is nothing in these "red flags" to indicate that Oscar Stene was abusing C.B., or that respondents were aware of the existence of these "red flags." *See Oslin,* 543 N.W.2d at 415 (stating that there must be some factual evidence that the employer has some basis for suspecting that a certain employee has such dangerous proclivities).

### III.

Appellants argue that by not taking immediate disciplinary action against Oscar Stene when they learned of the abuse, respondent churches ratified Stene's behavior. Appellants contend that the ratification of Oscar Stene's behavior is sufficient to impose liability to respondents for the harm caused by the abuse.

 Under appellants' ratification theory, "[a]n employer can assume liability for the tortious conduct of its employee by approving and ratifying such conduct, irrespective [of] whether that conduct is intentional or negligent." *DeBose v. Bear Valley Church of Christ,* 890 P.2d 214, 230 (Colo.App.1994), *rev' d on other grounds,* 928 P.2d 1315 (Colo.1996). However, ratification is inapplicable here because "ratification has only been found in the context of an employer-employee relationship...." *Powell v. City and County of Denver,* 973 F.Supp. 1198, 1204 (D.Colo.1997). As discussed above, there is no employer-employee relationship between Oscar Stene and the respondent church entities.

## IV.

■ Finally, respondent ELCA argues that notwithstanding the employment issues between Oscar Stene and respondent churches, the Establishment Clause and the Religious Freedom Clause bar subject matter jurisdiction over appellants' claims because resolving appellants' claims would require this court to become impermissibly entangled with religion. We disagree. Subject-matter jurisdiction is a question of law reviewed de novo. *Odenthal v. Minn. Conference of Seventh–Day Adventists,* 649 N.W.2d 426, 434 (Minn.2002).

■ "Whether a governmental regulation creates excessive entanglement usually depends on the character and purpose of the institution involved, the nature of the intrusion into religious administration, and the resulting relationship between the government and the religious authority." *Mrozka v. Archdiocese of St. Paul and Minneapolis,* 482 N.W.2d 806, 811 (Minn.App.1992), *review denied* (Minn. May 24, 1992). "Excessive entanglement is, ultimately, a question of degree." *Black v. Snyder,* 471 N.W.2d 715, 721 (Minn.App.1991), *review denied* (Minn. Aug. 29, 1991). Conduct that resulted in external and secular harm is not protected by the First and Fourteenth Amendments. *Mrozka,* 482 N.W.2d at 811.

■ Here, appellants' claims arise out of standard tort law and require a determination of whether Oscar Stene was an employee of respondent churches and whether the abuse occurred within the scope of the alleged employment. These determinations do not require us to interpret doctrinal matters. Examination of these matters does not constitute excessive entanglement in doctrinal matters. We take judicial notice that clergy have, for years, been found tortiously liable (when the proof is there) for abuse of others, and on several occasions, the doctrine of re-

spondeat superior brought in their employer churches for payment of damages because the record disclosed the necessary tie to the employer's work place.

## DECISION

The evidence demonstrates there was no employment relationship between Oscar Stene and respondent churches for purposes of respondeat superior. With no employment relationship, appellants' claims against respondents for vicarious liability, negligent supervision, and ratification, fail.

The district court applied the law to undisputed facts and we find that summary judgment was appropriate.

Respondents were properly involved in the case and properly brought into court and do not have "doctrinal immunity" under the First Amendment.

**Affirmed.**