# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1476

_____

Randy Philip Rau,

         Appellant,

v.

Michael David Roberts and
City of Minneapolis,

         Appellees.

\*   Appeal from the United States
\*   District Court for the
\*   District of Minnesota.

_____

Submitted: November 16, 2010
Filed: May 19, 2011

_____

Before SMITH, BEAM and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Randy Rau sued Michael Roberts and the City of Minneapolis ("City") for injuries Rau sustained in an assault that Roberts—an off-duty City police officer—allegedly committed. Rau's complaint against Roberts alleged excessive force pursuant to 42 U.S.C. § 1983 and assault and battery under Minnesota law. The complaint also alleged that the City was vicariously liable for the assault and battery under Minnesota law. The district court[1] granted the City's motion for summary

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

judgment with respect to the vicarious liability claims against the City; dismissed the § 1983 claim against Roberts; and remanded the assault and battery claims against Roberts to the Minnesota state court. On appeal, Rau seeks reversal of the court's decision to grant summary judgment for the City on his claims of vicarious liability for the assault and battery. For the following reasons, we affirm.

I. *Background*

On July 11, 2006, Roberts worked as a police officer for the City. Rau owns and operates a gas station and car wash called "The Perfect Carwash" in Brooklyn Center, Minnesota. Roberts's police department time card shows that he clocked out at 8:00 p.m. At approximately 9:00 p.m., Roberts traveled to The Perfect Carwash in his personal vehicle, with his wife driving, to buy gasoline. Roberts, still wearing his police-issued uniform, badge, utility belt, and firearm, stayed in the vehicle, while his wife prepared to fuel the car. Roberts's wife went inside to prepay for the fuel and then returned to the vehicle and attempted to pump the gas; however, the pump possibly malfunctioned, as Roberts could not tell if it had actually pumped the gas.

Roberts exited the vehicle and complained to the cashier, Jason Stevens. The two men disputed whether the gas had actually been dispensed. Unable to resolve the dispute himself, Stevens went inside the store to get Rau, who was in a back office. When Rau began talking to Roberts, Roberts told him, "I want my $25 or give me my [expletive] gas." Rau, standing near the vehicle and the gas pumps, told Roberts that the gas had been dispensed. Seeing that the vehicle door was open with the key in the ignition, Rau moved toward the door—in an attempt to show that the gas had been dispensed by starting the vehicle and checking the gas gauge. When he did so, Roberts stated, "[Y]ou touch my [expletive] car and I'll break your neck."

As Roberts and Rau continued to argue, Rau told Roberts that he would have to call the Brooklyn Center police if he wanted "his" gas. At some point, Rau told Roberts that he was going to remove the gas-pump nozzle from the gas tank of

Roberts's vehicle. Roberts responded, saying, "[D]on't touch my [expletive] car." Nonetheless, Rau reached toward the nozzle, and Roberts struck or pushed Rau with both hands, knocking Rau off his feet and causing him to hit the gas pump and an adjacent guard rail. Rau told Roberts that he was going into the store to call 911. Roberts followed him, yelling either, "[W]hat are you calling the [expletive] police for? The police are here," or "Why are you calling the cops? I am the cops."

After calling 911, Rau returned to Roberts's vehicle to remove the gas-pump nozzle—concerned that Roberts might drive off with the nozzle still attached to his car. Roberts again warned Rau not to touch his vehicle. With little or no warning, Roberts grabbed Rau, slammed him against the back of his vehicle, dropped him, picked him up, and, according to Rau, punched him in the face. According to Rau, right before Roberts punched him, Roberts yelled, "I am so [expletive]—for 32 years I have dealt with you white, [expletive] honkies and I'm tired of it."

During the altercation, a bystander, Ben Wysocki, asked Roberts whether he was on duty. Roberts first answered yes. When Wysocki asked him again, Roberts then answered no.

Rau then ran into the store and called 911 again. The Brooklyn Center police arrived soon thereafter but made no arrests. That night, Rau went to the hospital for treatment of injuries he allegedly suffered as a result of the incident, including a chipped tooth, bruises, a split lip, a minor concussion, back pain, neck pain, and anxiety.

Rau filed suit against Roberts and the City in Minnesota state court. His complaint against Roberts alleged excessive force pursuant to 42 U.S.C. § 1983 and assault and battery pursuant to Minnesota law. The complaint also alleged that the City was vicariously liable for the assault and battery. With Roberts's consent, the City removed the action to the district court. The district court had jurisdiction over

Rau's § 1983 claim against Roberts, and it exercised supplemental jurisdiction over the assault and battery claims against Roberts and the vicarious liability claims against the City. The City moved for summary judgment, arguing that Rau did not bring his § 1983 claim against the City and that the undisputed evidence showed that the City could not be held vicariously liable for the assault and battery. The district court granted the City's motion with respect to the vicarious liability claims, and it dismissed the § 1983 claim against Roberts *sua sponte*. Having dismissed Rau's only claim based on federal law, the § 1983 claim, the court remanded Rau's assault and battery claims against Roberts to the Minnesota state court.

## II. *Discussion*

Here, Rau argues that the district court erred in granting the City's motion for summary judgment on his vicarious liability claims against the City. Specifically, Rau argues that summary judgment was improper because a genuine issue of material fact exists regarding whether Roberts acted within the course and scope of the City's employment when he committed the alleged torts. It is undisputed that Roberts had clocked out of work prior to the incident. Rau, however, argues that a material fact remains unresolved involving whether Roberts was on duty. Rau so contends because Roberts told a witness that he was on duty; he was wearing his uniform and equipment; he "used his command voice and posture"; he told Rau "the police are here"; and he "acted in his capacity as an officer investigating a possible theft because he thought his wife did not get the gas she paid for." In addition, Rau argues that Roberts's assault was foreseeable based on a well-known risk of assault by police officers, citing several cases involving a police officer's assaultive conduct as evidence of this risk. He also maintains that the police department's written policy for officers in uniform shows that the City would have considered Roberts to be working and on duty while wearing his uniform.

The City counters that the district court properly granted summary judgment because Rau has failed to provide evidence creating a genuine issue of material fact

whether Roberts acted within the course and scope of the City's employment when he committed the alleged assault. First, the City argues that Rau has provided no evidence showing that the assault occurred within the work-related limits of time and place. Roberts clocked out one hour before the incident and admitted that he had completed all work for the day. Roberts was also outside of the City's jurisdiction as an officer, and no evidence placed him at The Perfect Carwash on police business. Second, the City argues that Rau has provided no evidence showing that the assault was related to Roberts's duties as a City employee. The City notes that, despite wearing his uniform and equipment, Roberts did not perform any police activities, and Roberts's alleged "command voice and posture" do not create a triable issue of fact on scope of employment. In addition, the City maintains that Rau's reliance on cases involving police assaults does not satisfy Minnesota's requirement that a plaintiff produce evidence, such as expert testimony, to show foreseeability based on a known risk of hazard.

We review the district court's grant of summary judgment de novo. *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Id.* "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008). We apply Minnesota law to Rau's state-law, vicarious-liability claims against the City. *See Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 n.9 (8th Cir. 2003) (recognizing that federal courts apply substantive state law when the district court took the state-law claims under its discretionary supplemental jurisdiction).

In Minnesota, "[u]nder the doctrine of respondeat superior, 'an employer is vicariously liable for the torts of an employee committed within the course and scope of employment.'" *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 583 (Minn. 2008) (quoting *Schneider v. Buckman*, 433 N.W.2d 98, 101 (Minn. 1988)). "Such liability stems not from any fault of the employer, but from a public policy determination that liability for acts committed within the scope of employment should be allocated to the employer as a cost of engaging in that business." *Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999). An employer will only be vicariously liable for an employee's intentional tort, such as an assault, if "(1) 'the source of the [assault] is related to the duties of the employee,' and (2) 'the assault occurs within work-related limits of time and place.'" *Id.* (quoting *Lange v. Nat'l Biscuit Co.*, 211 N.W.2d 783, 786 (Minn. 1973)). The elements of the claim are, importantly, conjunctive. Absence of evidence to support either one of the *Lange* elements enables a court to determine as a matter of law that the employee did not commit the tort within the scope of his employment. *C.B. ex rel. L.B. v. Evangelical Lutheran Church in Am.*, 726 N.W.2d 127, 135 (Minn. Ct. App. 2007) (citing *Lange*, 211 N.W.2d at 786).

As noted, the second *Lange* element for vicarious liability requires showing that "'the assault occur[red] within work-related limits of time and place.'" *Fahrendorff*, 597 N.W.2d at 910 (quoting *Lange*, 211 N.W.2d at 786). Few Minnesota courts have discussed this element at great length, as many of the reported cases involve employees who are indisputably "at work" at the time they allegedly committed the tort in question. *See, e.g.*, *Frieler*, 751 N.W.2d at 562, 583 (noting that the second *Lange* element was undisputed in a case involving alleged sexual harassment that occurred at the workplace during work hours).

At least one Minnesota court has discussed whether, and under what circumstances, a plaintiff can establish this element when the tort occurred while the employee was not at his usual place of employment. In *C.B.*, the plaintiff sued a

retired pastor's church for sexual abuse that occurred when the plaintiff visited the pastor at his farm. 726 N.W.2d at 131. The plaintiff visited the farm only for personal reasons and not "for any type of religious counseling or any other reason connected to [the pastor's] status as a retired minister." *Id.* at 135. On these facts, the Minnesota Court of Appeals found that the church could not be vicariously liable for the pastor's assault because the assault did not occur within work-related limits of time and space. *Id.*

In the present case, Rau has produced no evidence showing that Roberts assaulted Rau within Roberts's work-related limits of time and space. The undisputed evidence shows that Roberts had been off duty for approximately one hour when he visited The Perfect Car Wash. In addition, because he was in Brooklyn Center, he was outside his jurisdiction as an officer for the Minneapolis Police Department. He traveled to The Perfect Car Wash with his wife to get gasoline for his personal vehicle. As in *C.B.*, there is no evidence that Roberts was conducting any work-related activities. Rau's assertions that Roberts was "investigating a possible theft" of gasoline and "us[ing] his command voice and posture" are unsupported by the record. Likewise, Roberts's statement that "the police are here," made in the context of his heated dispute with Rau, cannot reasonably be interpreted as part of a police investigation. Similarly, while Roberts told Wysocki that he was on duty, he soon recanted and admitted that he was not on duty. Finally, the Minneapolis Police Department's written policy that requires officers to wear a uniform and carry certain equipment while on duty does not prove that an officer in uniform is, in fact, on duty. We hold that Rau has failed to show that the assault occurred within work-related limits of time and place.

Because Rau has provided insufficient evidence to establish the second *Lange* element, we decline to address Rau's argument that the assault was foreseeable and, therefore, related to Roberts's duties as a police officer. We conclude that the district

court did not err in granting summary judgment to the City on Rau's claims that the City was vicariously liable for the assault and battery.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____